UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENNIE STARKS, | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 348 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CITY OF WAUKEGAN, LIEUTENANT URBANCIC, | ) | |
| W. BIANG, P. STEVENSON, M. JUAREZ, D. | ) | |
| DEPREZ, DR. CARL HAGSTROM, DR. RUSSELL | ) | |
| SCHNEIDER, and SHARON THOMAS-BOYD, | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion and Order**

Plaintiff Bennie Starks was convicted of aggravated criminal sexual assault, attempted

aggravated criminal sexual assault, and aggravated battery in the Circuit Court of Lake County,

Illinois. Doc. 95 at ¶ 40. In 2006, after 20 years in prison, Starks was released after the

Appellate Court of Illinois vacated the two sexual assault convictions. *Id*. at ¶ 48. Starks then

brought this civil suit under 42 U.S.C. § 1983 and Illinois law against the City of Waukegan,

Illinois; five former or present Waukegan police officers named Urbancic, Biang, Stevenson,

Juarez, and Deprez, who allegedly participated in the investigation that led to his conviction

(collectively, "Police Defendants"); Dr. Carl Hagstrom and Dr. Russell Schneider, two dentists

who were involved in the investigation and trial as expert witnesses for the prosecution (together,

"Dentist Defendants"); and Sharon Thomas-Boyd, a serology expert who also participated in the

investigation and trial. The amended complaint, which Starks filed in January 2013 after a

lengthy stay of this case had been lifted, is organized into nine counts: (1) a § 1983 claim against

all Defendants for violating Starks's Fourteenth Amendment right to due process of law; (2) a

§ 1983 claim against the Police Defendants for failure to intervene; (3) a § 1983 claim against all

Defendants for conspiracy to violate Starks's constitutional rights; (4) a § 1983 claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (5) a state law malicious prosecution claim against all Defendants; (6) a state law intentional infliction of emotional distress claim against all Defendants; (7) a state law conspiracy claim against all Defendants; (8) a state law *respondeat superior* claim against the City with respect to the alleged state law violations by its officers; and (9) a state law indemnification claim against the City under 745 ILCS 10/9-102.  Doc. 95.

Thomas-Boyd has answered the amended complaint.  Doc. 99.  The City and the Police Defendants (collectively, "Waukegan Defendants") filed a motion to dismiss, Doc. 103, and the Dentist Defendants filed a separate motion to dismiss, Doc. 100.  The motions are denied, except as to the intentional infliction of emotional distress and *Monell* claims, which are dismissed.

## Background

In considering the motions to dismiss, the court assumes the truth of the amended complaint's factual allegations, though not its legal conclusions.  *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).  The court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Starks's briefs opposing dismissal, so long as those facts "are consistent with the pleadings."  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  The following facts are set forth as favorably to Starks as these materials allow.  *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).  The court's recitation of these facts at the pleading stage is not intended to endorse them.

In January 1986, a woman referred to as M.G. reported to the Waukegan police that she had been attacked and raped by an African-American man.  Doc. 95 at ¶ 10.  She gave the police

a physical description of her attacker that did not match Starks's appearance. *Id*. at ¶ 11. The police found a coat and other clothing that belonged to Starks at the scene of the alleged assault. *Id*. at ¶ 12. But this clothing had been stolen from Starks by two men on the evening that the assault occurred. *Id*. at ¶ 13. A few days later, Defendants Biang and Juarez showed M.G. a photo of Starks as part of a suggestive photo array and induced her to identify Starks as her attacker. *Id*. at ¶ 14.

The same day, Starks voluntarily came to the police station and was interviewed by Biang. *Id*. at ¶ 15. Biang could have recorded the interview but did not, and he proceeded to prepare a police report that attributed various inculpatory statements to Starks, when in fact Biang made up those statements himself. *Id*. at ¶¶ 15-16. The next day Starks was interrogated by Defendant Deprez, who, like Biang, did not record the interview and then filed a police report that falsely attributed inculpatory statements to Starks. *Id*. at ¶¶ 17-18. Defendant Urbancic, a police lieutenant and the supervisor of Biang, Deprez, Juarez, and Stevenson, was closely involved in the investigation. *Id*. at ¶ 19. Although the Police Defendants knew that M.G. was unreliable and that her identification of Starks was unreliable and a product of improper suggestion, they failed to tell the prosecutors any of this. *Id*. at ¶¶ 20, 22. Instead, they met with M.G. several more times and, through suggestion, led her to change significant aspects of her story to match the other evidence in the case and to undermine Starks's alibi. *Id*. at ¶ 21. As a result of the Police Defendants' acts and omissions, Starks was arrested and charged. *Id*. at ¶ 23.

The Dentist Defendants held themselves out as experts in forensic dentistry. *Id*. at ¶ 5. The prosecution hired the Dentist Defendants to compare an alleged bite mark on M.G.'s body with Starks's teeth. *Id*. at ¶ 24. The Dentist Defendants reported that the bite mark had been made by Starks. *Id*. at ¶ 25. But they intentionally misapplied the methodology they purported

to use, employed a method of comparison that has been rejected by the forensic dentistry community, and used flawed preservation and photography techniques. *Id*. at ¶ 26. Thus, while they told the prosecution that they could confidently attribute the bite mark to Starks, they were actually aware that they could not reliably make that identification. *Id*. at ¶ 27.

Defendant Thomas-Boyd was an employee of the Northern Illinois Crime Laboratory and held herself out as an expert in serology, the science of bodily fluids. *Id*. at ¶ 6. As part of the investigation, Thomas-Boyd examined semen that had been recovered from M.G. and physical evidence from Starks. *Id*. at ¶¶ 28-29. The results of her tests excluded Starks as a possible source of the semen, providing very strong evidence of his innocence given that M.G. had not had sexual intercourse during the two weeks preceding the attack, meaning that the semen recovered from her body and clothing must have come from her attacker. *Id*. at ¶¶ 30-31. But Thomas-Boyd kept this to herself and instead submitted a report that said, falsely, that Starks could have been the source of the semen. *Id*. at ¶¶ 32-33.

Juarez gave false testimony to the grand jury, leading it to indict Starks. *Id*. at ¶ 34. At trial, Juarez, Biang, and Deprez all gave false testimony against Starks, including by saying that the photo array that led to M.G.'s identification of Starks had not been suggestive and that Starks had made inculpatory statements during interrogation. *Id*. at ¶ 35. The Dentist Defendants also gave false testimony, repeating their assertion, previously made to the prosecutors, that they could reliably link the bite mark on M.G. to Starks's teeth when in fact their data did not allow them to make that link. *Id*. at ¶ 36. Thomas-Boyd testified that the semen collected from M.G.'s body and clothing could have been Starks's and concealed her knowledge that the tests had actually excluded Starks as a possible source. *Id*. at ¶ 38. The Police Defendants never told the prosecution or the defense that M.G.'s testimony was the product of their suggestive practices.

*Id*. at ¶ 39. Starks alleges that Defendants did all this pursuant to a conspiracy among them to deprive Starks of his constitutional rights and to secure his conviction, and that the acts described above were overt acts taken by Defendants pursuant to their conspiracy. *Id*. at ¶ 57.

Starks was convicted of aggravated criminal sexual assault, attempted aggravated sexual assault, and aggravated battery, and was sentenced to 60 years in prison. *Id*. at ¶ 40. His conviction was affirmed on direct appeal. *Id*. at ¶ 42. In March 2002, more than 16 years after his arrest, Starks filed a motion for a new trial in which he asserted that he was innocent, that post-conviction DNA tests excluded him as the source of the semen, and that Thomas-Boyd had lied about the results of her tests. *Id*. at ¶ 43. The state trial court denied Starks's motion. *Id*. at ¶ 44. But the Appellate Court of Illinois reversed the trial court's judgment, vacated Starks's aggravated criminal sexual assault and attempted aggravated criminal sexual assault convictions, and remanded the case for a new trial on those charges. *Id*. at ¶ 45; *see People v. Starks*, 850 N.E.2d 206 (Ill. App. 2006), *appeal denied*, 861 N.E.2d 662 (Ill. 2006). The court takes judicial notice of the appellate court's statement that "[d]uring the first trial, the jury was incorrectly advised that the seminal fluid found on the victim's underwear and in the victim's vaginal fluid could not be excluded as being [Starks's]. Therefore, the jury was provided incorrect testimony by the State's own expert witness regarding the serology results as they related to [Starks]." 850 N.E.2d at 215. The court also said that "[t]he DNA results as presented are probative of a factual situation that is so different from the victim's testimony that … the outcome on retrial would probably be changed." *Id*. at 214. After 20 years in prison, Starks was released on bond pending retrial. Doc. 95 at ¶ 49.

The State kept up the prosecution until May 2012, at which point the aggravated criminal sexual assault and attempted aggravated criminal sexual assault charges were dismissed *nolle*

*prosequi*. *Id*. at ¶ 50. Starks alleges that by that point, most of the evidence against him had been disproved, including the identification of the semen as possibly having come from him and the Dentist Defendants' assertion that his teeth matched the bite mark on M.G. *Id*. at ¶ 51. Starks had also filed a post-conviction petition to challenge his aggravated battery conviction, and in June 2012 the appellate court reversed the trial court's dismissal of his petition. *Id*. at ¶ 52; *see also People v. Starks*, 975 N.E.2d 71 (Ill. App. 2012), *appeal denied*, 981 N.E.2d 1002 (Ill. 2012). The appellate court stated that "the bite mark evidence has been discredited by a report by two odontologists who examined it. The report states that the method used by the State's forensic odontologists in 1986 has since been rejected by its own creators. The report also states that the State's odontologists misapplied the methodology and used flawed preservation and photography techniques. Accordingly, we determine that the new DNA and bite mark evidence is of such a conclusive nature that it would probably change the result on retrial." 975 N.E.2d at 77-78. The appellate court remanded the post-conviction petition to the trial court, instructing it to hold an evidentiary hearing to determine whether Starks's aggravated battery conviction had denied him due process because he was actually innocent. *Id*. at 78. In January 2013, the State agreed that the battery conviction should be vacated and dismissed *nolle prosequi* all remaining criminal charges against Starks. Doc. 95 at ¶ 55.

Starks filed this lawsuit in January 2009, after his sexual assault convictions had been vacated and he had been released on bond pending a new trial on those charges, but before his aggravated battery conviction had been vacated and before the State had dismissed any of the charges against him. Doc. 1. The court stayed the lawsuit pending the resolution of the state court criminal proceedings. 2010 WL 481290 (N.D. Ill. Feb. 4, 2010) (Coar, J.). After the last charges against him were dismissed in January 2013, Starks moved to lift the stay; the court

granted the motion and allowed Starks to file a nine-count amended complaint. Doc. 94. The court has original jurisdiction over Starks's § 1983 claims under 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367(a).

## Discussion

The Waukegan Defendants' and the Dentist Defendants' motions to dismiss both purport to come under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 100 at 1; Doc. 104 at 2-3. There is no argument in either motion that plausibly aims at the court's subject matter jurisdiction, as required for dismissal under Rule 12(b)(1). The Dentist Defendants appear to believe that the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), is jurisdictional, Doc. 110 at 3-7, but they are wrong, as "the *Heck* defense is not jurisdictional." *Okoro v. Bohman*, 164 F.3d 1059, 1061 (7th Cir. 1999). So the court will treat the motions as seeking dismissal only under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I. The Waukegan Defendants' Motion to Dismiss

The grounds for dismissal advanced by the Waukegan Defendants can be categorized as follows: (1) a challenge to the complaint as a whole for "group pleading"; (2) a challenge to the complaint as a whole for "shotgun pleading"; (3) a challenge to the due process claim on the ground that it is a "hybrid claim"; (4) a challenge to the due process claim on absolute immunity grounds; (5) a challenge to the failure to intervene claim; (6) a challenge to the conspiracy claim; (7) a challenge to the § 1983 failure to intervene and conspiracy claims that incorporates the Dentist Defendants' challenge to those counts; (8) a challenge to the *Monell* claim; (9) a challenge to the malicious prosecution claim; (10) a challenge to the intentional infliction of emotional distress claim, again via incorporation of the Dentist Defendants' arguments; and (11) a challenge to the state law conspiracy claim. The court will address these arguments in turn.

A.    "Group Pleading"

Starks names nine defendants, each of whom is alleged to have taken distinct unlawful actions; the one exception is that the allegations against the Dentist Defendants do not distinguish between those two defendants. Several counts in the complaint refer generally to "the Defendants" rather than specifying which defendants are the subjects of that count. It is not clear that all claims are actually aimed at all nine defendants. For instance, Starks cannot state claims against the City for denial of due process (Count I) or conspiracy (Count III) under § 1983, because the only way the City could be liable under those claims is by virtue of the acts of its employees, yet municipalities cannot be held liable under § 1983 under a *respondeat superior* theory for the acts of their officers. *See Monell*, 436 U.S. at 691. Probably Starks did not intend to include the City as a defendant with respect to those two counts.

Setting aside Starks's failure to state explicitly that some claims are not aimed at the City, the court perceives nothing problematic in Starks's use of collective references to "the Defendants" to refer to all of them. The Waukegan Defendants point out, correctly, that Starks is obliged to "adequately plead[] personal involvement" of each defendant, *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009), and that "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants," *Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). Doc. 104 at 3-4. But in the "Facts" section of his complaint, Doc. 95 at ¶¶ 10-60, Starks states quite clearly what each individual defendant is alleged to have done, as can be seen from the account of the factual allegations given above. Starks's "complaint is therefore quite different from the one in *Grieveson*, where a prisoner asserted § 1983 claims against seven different officers arising from seven different attacks

without tying any particular officer to any particular injury." *Engel v. Buchan*, 710 F.3d 698,

710 (7th Cir. 2013). Starks has done all he must to give the Waukegan Defendants the notice to

which Rule 8(a) entitles them, and the fact that some paragraphs of the complaint refer to "the

Defendants" rather than listing each defendant's name does not require dismissal.

### B. "Shotgun Pleading"

By "shotgun pleading," the Waukegan Defendants mean the statement in the first

paragraph of each count that "[e]ach paragraph of this Complaint is incorporated as if restated

fully herein." Doc. 95 at ¶¶ 61, 69, 73, 80, 85, 92, 98, 103, 106. They quote *CustomGuide v.*

*CareerBuilder, LLC*, 813 F. Supp. 2d 990 (N.D. Ill. 2011), which states: "Courts have

discouraged this type of 'shotgun' pleading where each count incorporates by reference all

preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged

are not material to the claim, or cause of action, appearing in a count's heading. Such pleadings

make it virtually impossible to know which allegations of fact are intended to support which

claim(s) for relief." *Id.* at 1001 (citation, brackets, and internal quotation marks omitted). The

Waukegan Defendants did not raise this "shotgun pleading" argument until their reply brief, and

so they forfeited it and the court will not consider it. *See Narducci v. Moore*, 572 F.3d 313, 324

(7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a

reply brief is forfeited"); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th

Cir. 2003) ("Because Volvo raised the applicability of the Maine statute in its reply brief, the

district court was entitled to find that Volvo waived the issue.").

### C. Count I (Due Process) as a "Hybrid Claim"

The Waukegan Defendants next argue that Count I, titled "42 U.S.C. § 1983 Claim for

Denial of Due Process," is an impermissible "hybrid claim" because it does not specify the

particular due process doctrine that Defendants are alleged to have transgressed. Doc. 111 at 5-7; *see Daniels v. Williams*, 474 U.S. 327, 337 (1986) (Stevens, J., concurring in the judgment) (noting that the Fourteenth Amendment's Due Process Clause is the source of several distinct legal doctrines). Defendants make this argument only in their reply brief, resulting in another forfeiture. *See Narducci*, 572 F.3d at 324; *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 389.

### D. Absolute Immunity for Count I (Due Process)

Paragraphs 34-38 of the complaint allege that the Police Defendants gave knowingly false testimony either to the grand jury that indicted Starks or during his criminal trial. Doc. 95 at ¶¶ 34-38. The Supreme Court has made clear that a witness has absolute immunity against any § 1983 claim based on his grand jury or trial testimony. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012) (grand jury testimony); *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983) (trial testimony). The Court held that such immunity extends to law enforcement witnesses. *See Rehberg*, 132 S. Ct. at 1505-06; *Briscoe*, 460 U.S. at 341-44. Moreover, the Court held that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Rehberg*, 132 S. Ct. at 1506. Given this, the facts alleged in ¶¶ 34-38 cannot ground liability on any of Starks's claims.

Defendants argue that this requires dismissal of Count I, the due process claim. Doc. 104 at 4-5. But as recounted above, the Police Defendants are alleged to have done much more than just give false testimony and conspire to do so, and nothing in Count I suggests that Starks means to base his due process claim solely on the acts—testifying before the grand jury and the jury—for which the Police Defendants have absolute immunity. The Police Defendants do not argue that the other allegations against them—for instance, that they caused M.G. to identify Starks as

her assailant by giving her a suggestive photo array, and filed reports that falsely attributed inculpatory statements to Starks—could not ground a due process claim. *See Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012) ("a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way"). Because the Police Defendants have not made that argument, the court will not make it for them. *See Franklin v. Gilmore*, 188 F.3d 877, 884 (7th Cir. 1999) (noting that a litigant could have made an argument but had not, and concluding that "we will not make it for him"). Thus, the Police Defendants' proper assertion of absolute immunity for allegedly giving false testimony fails to undermine the due process claim in its entirety, and so it does not require dismissal of that claim.

### E.    Count II:  § 1983 Failure to Intervene Claim

After incorporating by reference all other paragraphs in the complaint, Count II, titled "42 U.S.C. § 1983 Claim for Failure to Intervene," alleges as follows:

> 70.  One or more of the Defendant officers [the Police Defendants] had opportunities to intervene on behalf of Plaintiff and prevent the continuing constitutional violations described herein, but due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

> 71.  As a direct and proximate result of Defendant officers' failure to intervene to prevent the continuing violation of Plaintiff's constitutional rights, Plaintiff suffered the injuries set forth above, including physical pain and suffering and emotional distress.

> 72.  The misconduct described in this Count was committed intentionally, willfully, and/or with reckless or deliberate indifference to Plaintiff's clearly established constitutional rights.

Doc. 95 at ¶¶ 70-72.

The Seventh Circuit has held that "under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983. … An officer who is present and fails to

intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). The Police Defendants construe Count II as a claim that the prosecution in Starks's criminal trial deprived him of due process as interpreted by *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing evidence—the Dentist Defendants' and Thomas-Boyd's knowledge that the dental and serological tests they had done did not implicate Starks—that might have materially assisted his defense, and that the Police Defendants are liable for failing to force the prosecutors to disclose that evidence. Doc. 104 at 6 ("The gist of such a claim here … would have to be that the Waukegan Police Defendants had knowledge that *Brady* required the disclosures about the DNA and bite marks and that the prosecutors were purposely not going to make the disclosures Plaintiff alleges should have been made … yet he tries to weave in the police defendants for liability for the prosecutors' failure to disclose that evidence.").

But as Starks says in his brief opposing dismissal, "[t]hat is obviously not Plaintiff's claim." Doc. 109 at 9. Rather, Count II alleges that each of the Police Defendants participated in the fabrication of evidence against him, Doc. 95 at ¶¶ 14-22, and that each knew that the others were doing so and failed to intervene to prevent those constitutional violations, Doc. 109 at 10. Under *Yang*, that plainly suffices to state a § 1983 claim for failure to intervene, since it is alleged that each officer knew that constitutional violations were being committed by other officers and could have prevented these violations but failed to do so.

### F.      Count III:  § 1983 Conspiracy Claim

Defendants next contend that Count III, which alleges that Defendants conspired to deprive him of his constitutional rights in violation of § 1983, falls short of the Rule 8(a) pleading standard as interpreted by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Doc. 104 at 6-8. *Iqbal* held that "[a] claim has facial plausibility [as required to survive dismissal] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  556 U.S. at 678.

Starks's § 1983 conspiracy claim meets that standard.  The complaint describes acts performed by the individual defendants that were intended to and did lead to his prosecution and conviction for crimes he did not commit.  The complaint further alleges that "Defendants agreed among themselves and with other individuals to act in concert in order to deprive Plaintiff of his constitutional rights, including his rights to due process and to a fair trial, as set forth" in the complaint's fact section.  Doc. 95 at ¶ 74.  Even if this particular allegation is conclusory, meaning that the court should not accept it as true standing alone, *see Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"), the complaint's other allegations satisfy *Iqbal* because they allow the court to draw the reasonable inference that Defendants really did agree to act together to violate Starks's constitutional rights.  The complaint amply alleges that the Police Defendants, the Dentist Defendants, and Thomas-Boyd all worked to get Starks convicted for a crime he did not commit, and it is more plausible that they each made their contributions to that effort in the context of an agreement to secure a wrongful conviction than that, by some wild coincidence, everyone who came into contact with Starks's case independently developed a desire to see him convicted and a willingness to lie in pursuit of that goal.

This is not a case where "the well-pleaded facts do not permit the court to infer more than the possibility of misconduct." *Id*. at 679. In other words, this case is not like *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which held that a complaint alleging antitrust conspiracy had to be dismissed because it lacked "factual context suggesting agreement, as distinct from identical, independent action." *Id*. at 549. Rather, this case is like *Geinosky v. City of Chicago*, *supra*, where the Seventh Circuit rejected a comparable *Iqbal* argument with the following explanation:

> While the complaint makes only rather conclusory direct allegations of conspiracy, the complaint also alleges a pattern of harassment by several officers over a period of months. It is a challenge to imagine a scenario in which that harassment would not have been the product of a conspiracy. Under *Twombly*, all plaintiff needed to allege was a plausible account of a conspiracy. This complaint goes well beyond that. … *Iqbal* calls on us to apply our "judicial experience and common sense." If several members of the same police unit allegedly acted in the same inexplicable way against a plaintiff on many different occasions, we will not dismiss a complaint for failure to recite language explicitly linking these factual details to their obvious suggestion of collusion.

675 F.3d at 749 (quoting *Iqbal*, 556 U.S. at 679) (one citation omitted). Because Starks's factual allegations make an agreement among Defendants plausible, he has a viable conspiracy claim.

## G.     The Dentist Defendants' Limitations Challenge to Counts II and III

In their reply brief, the Police Defendants seek to incorporate by reference the Dentist Defendants' statute of limitations challenge to Counts II and III, the § 1983 failure to intervene and conspiracy claims. Doc. 111 at 7. As set forth below, the court declines to consider the Dentist Defendants' argument with respect to Count II because, as the Dentist Defendants' recognize, they are not named as defendants to that count and therefore cannot properly challenge it. But if the court were to consider their argument as to Count II, the court would reject it on the same grounds given below with respect to the Dentist Defendants' limitations

challenge to Count I; those grounds suffice for Count II as well because the Dentist Defendants do not distinguish between the two counts. And for the reasons given below, the court rejects the Dentist Defendants' argument that Count III is time-barred. Accordingly, the Dentist Defendants' arguments regarding Counts II and III do not entitle the Police Defendants to dismissal of those claims.

### H.   Count IV:  *Monell* Claim

After incorporating by reference all other paragraphs in the complaint, Count IV, titled "42 U.S.C. § 1983 *Monell* Policy Claim Against City of Waukegan," alleges as follows:

> 81.  The actions of [the Police Defendants] as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Waukegan[,] its Police Department, Police Board, and/or City Council.

> 82.  At all times material to this complaint, Defendant City and its Police Department had interrelated *de facto* policies, practices, and customs which included, *inter alia*:

> a)  filing false reports and giving false statements and pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of such reports and statements;

> b)  the failure to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who were repeatedly accused of wrongful imprisonments, malicious prosecutions and wrongful convictions and of making false reports and statements;

> c)  the police code of silence, specifically in cases where police officers refused to report or otherwise covered up instances of police misconduct, and/or the fabrication, suppression and destruction of evidence of which they were aware, despite their obligation under the law and police regulations to do so;

> d)  covering up, suppressing and withholding exonerating, exculpatory, and/or other evidence favorable to criminal Defendants; and

> e)  coercing and fabricating false and inculpatory statements from suspects and witnesses.

83.  These policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, encouraged, *inter alia*, the fabrication, coercion, manipulation, and alteration of evidence, the making of false statements and reports, the giving of false testimony, and the pursuit and continuation of wrongful convictions and false arrests and imprisonments, and otherwise covering up police misconduct, and were, separately and together, a direct and proximate cause of the unconstitutional acts committed by the named Defendants and the injuries suffered by the Plaintiff.

84.  Additionally, said failure to properly train, discipline, monitor, control, assign, transfer, supervise, and counsel the police Defendants herein was done with deliberate indifference and likewise acted as a direct and proximate cause of the injuries to Plaintiff.

Doc. 95 at ¶¶ 81-84.  None of the complaint's factual allegations pertain to the City's customs or policies, and so none buttress this claim.  Starks's brief opposing dismissal mentions four cases of similar misconduct in Waukegan.  Doc. 109 at 12-13.

To state a municipal liability claim under *Monell*, the plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it."  *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (internal quotation marks omitted).  "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation."  *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe*, 665 F.3d 774, 780 (7th Cir. 2011).  Starks has not alleged any express policy, and nor has he referred to any decision by an official policymaker of the City of Waukegan.  The court therefore assumes that he seeks to proceed under the second prong by establishing a widespread though unwritten practice of fabricating inculpatory evidence and suppressing exculpatory evidence to secure the prosecution and conviction of innocent people.

Starks's unwritten practice allegations do not satisfy Rule 8(a). *Iqbal* holds that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S. at 678. The complaint's allegations amount to nothing more than conclusory boilerplate. As the Seventh Circuit has recognized, to allow a plaintiff to proceed to discovery with *Monell* allegations like those in Starks's complaint "would be tantamount to allowing suit to be filed on a *respondeat superior* basis. Plaintiffs could file claims whenever a police officer abused them, add *Monell* boilerplate allegations, and proceed to discovery in the hope of turning up some evidence to support the 'claims' made." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). Claims like Starks's that are "based on wholly conclusory allegations of a de facto municipal policy … the existence of which is to be inferred not from something the municipality did but rather from its inaction, constitute one of the most prevalent forms of abuse in section 1983 actions." *Ibid.* (internal quotation marks omitted).

The four other alleged cases of similar misconduct cited in Starks's brief, which must also be considered on a Rule 12(b)(6) motion, *see Geinosky*, 675 F.3d at 745 n.1, do not save the *Monell* claim from dismissal. The four other cases are: a § 1983 suit by a person arrested and convicted for home invasion and sexual assault in 1989, *see Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008); a state appellate court decision holding that a 2009 conviction had been supported by insufficient evidence, *see People v. Rivera*, 962 N.E.2d 53 (Ill. App. 2011); an account of a failed murder prosecution in 1996, *see* www.law.northwestern.edu/legalclinic/wrongfulconvictions/il/james-edwards.html; and the docket of an ongoing civil lawsuit in which the plaintiff alleges that he was prosecuted as a result of police misconduct in 2005, *see Hobbs v. Cappelluti*, No. 10 C 7649, Doc. 159 at 2 (N.D. Ill. filed Dec. 1, 2010). Even assuming that these four cases involved misconduct by the

Waukegan police similar to that to which Starks allegedly was subjected, five cases (including Starks's) over a period of more than twenty years are insufficient to create municipal liability for a "widespread practice." In *Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002), the Seventh Circuit held that three incidents of constitutional violation within a four-year period "were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware." *Id*. at 538. The Seventh Circuit also favorably cited and discussed *Denno v. School Board of Volusia County*, 218 F.3d 1267 (11th Cir. 2000), which held that evidence of the same constitutional violation against four individuals "did not represent a persistent and widespread practice." *Id*. at 1277. Starks's allegations are similarly, if not more, insufficient.

Starks also seeks to assert a *Monell* claim against the City for failure to train its officers. Doc. 95 at ¶ 84. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact." *Ibid*. (citation and internal quotation marks omitted); *see also Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). The complaint has no allegations to that effect. Starks's failure-to-train allegation is the merest boilerplate, and so it cannot survive dismissal.

## I.    Count V:  State Law Malicious Prosecution Claim

The Police Defendants seek dismissal of Count V, which asserts a state law malicious prosecution claim. "Under Illinois law, the elements of a malicious prosecution are (1)

commencement of criminal proceedings by the defendants; (2) termination of that matter in favor

of the plaintiffs; (3) the absence of probable cause for the proceedings; (4) the presence of

malice; and (5) resulting damages." *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009)

(citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Defendants challenge the

malicious prosecution claim on two grounds: (1) that Starks has failed to allege that the

prosecutions were terminated in a manner indicative of his innocence, as required by the second

element; and (2) that Starks has failed to allege that the Police Defendants commenced the

criminal proceeding against him within the meaning of the first element because, as the

Waukegan Defendants put it, "[p]olice do not prosecute, prosecutors do." Doc. 104 at 13.

"In regard to the second element, a malicious prosecution action cannot be predicated on

underlying criminal proceedings which were terminated in a manner not indicative of the

innocence of the accused." *Swick*, 662 N.E.2d at 1242. The question, then, is whether Starks has

failed to adequately allege that the *nolle prosequi* dismissals of the criminal proceedings against

him were indicative of his innocence. "The abandonment of the proceedings is not indicative of

the innocence of the accused when the *nolle prosequi* is the result of an agreement or

compromise with the accused, misconduct on the part of the accused for the purpose of

preventing trial, mercy requested or accepted by the accused, the institution of new criminal

proceedings, or the impossibility or impracticability of bringing the accused to trial." *Ibid*. For a

*nolle prosequi* dismissal to satisfy the favorable termination element, "[t]he circumstances

surrounding the abandonment of the criminal proceedings must compel an inference that there

existed a lack of reasonable grounds to pursue the criminal prosecution." *Id*. at 1243.

Nothing in the complaint suggests that the dismissals of the criminal charges against

Starks were brought about by an agreement or compromise with Starks, misconduct on the part

of Starks for the purpose of preventing trial, mercy requested or accepted by Starks, the institution of new criminal proceedings against Starks, or the impossibility or impracticability of bringing him to trial. Rather, taking the alleged facts as true, the inference that there existed a lack of reasonable grounds to pursue Starks's prosecution is compelled. The dismissals were the direct results of the two above-referenced state appellate court decisions, which held that the evidence against Starks had been undermined and that a jury aware of the true evidence would more likely than not acquit. *See Starks*, 975 N.E.2d at 77-78; *Starks*, 850 N.E.2d at 214. *Swick* is distinguishable, since in that case there was no "evidence of the reason for the entry of the *nolle prosequi*." *Id*. at 1243. Here, the context makes clear that the prosecutor dropped the charges against Starks because new evidence had exonerated him. Starks has amply alleged that the prosecutions were terminated in his favor.

As to the first malicious prosecution element, the Police Defendants' argument that "[p]olice do not prosecute, prosecutors do," Doc. 104 at 13, is similarly unavailing. Illinois law holds that "[l]iability for malicious prosecution is not confined to situations where the defendant signed a complaint against the plaintiff. Rather, liability extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. 2000); *see also Allen v. Berger*, 784 N.E.2d 367, 370-71 (Ill. App. 2002) (same); *Frye v. O'Neill*, 520 N.E.2d 1233, 1240 (Ill. App. 1988) (same). The Police Defendants fit that description, since by leading M.G. to name Starks as her assailant through a suggestive photo array and by getting her to change her story to strengthen the case against him, Doc. 95 at ¶¶ 14, 21, and also by filing reports that falsely attributed inculpatory statements to him, *id*. at ¶¶ 15-18, the Police

Defendants directly brought about Starks's prosecution—at the least, the court must draw that inference from the allegations at this stage in the litigation.

### J.      Count VI:  Intentional Infliction of Emotional Distress Claim

In their reply brief, the Police Defendants incorporate by reference the Dentist Defendants' argument that Starks's intentional infliction of emotional distress claim is barred by the statute of limitations.  Doc. 111 at 10.  As explained below, the Dentist Defendants are correct.  Moreover, the Dentist Defendants' arguments apply equally to the Police Defendants.  Accordingly, the emotional distress claim is dismissed.

### K.      Count VII:  State Law Civil Conspiracy Claim

Count VII advances a claim for civil conspiracy under Illinois law.  In their motion to dismiss, the Waukegan Defendants say only this: "Plaintiff's state law claim for civil conspiracy is derivative of his federal claim [of conspiracy to deprive him of his constitutional rights], discussed above in Section IV.  For those same reasons, Plaintiff's Count VII must also be dismissed."  Doc. 104 at 14.  Because the court has held that the § 1983 conspiracy claim should not be dismissed, and because Defendants propose no other ground for dismissing the state law civil conspiracy claim, the motion to dismiss is denied as to that claim.

## II.      The Dentist Defendants' Motion to Dismiss

The Dentist Defendants press four grounds for dismissal: (1) that Starks's claims are barred by the applicable statutes of limitations; (2) that the § 1983 claims against them fail because they are private actors who did not act "under color of" state law; (3) that the § 1983 conspiracy claim fails to satisfy *Iqbal*; and (4) that the emotional distress claim fails because the Dentist Defendants have absolute immunity under Illinois law for their testimony at his trial.

A.      The Statute of Limitations

The Dentist Defendants contend that several of Starks's claims are barred by the statute

of limitations.  Doc. 102 at 5-8.  In their reply brief, however, they acknowledge that the § 1983

failure to intervene claim is aimed only at the Police Defendants, Doc. 110 at 1-2; *see* Doc. 95 at

¶¶ 70-71 (Count II, referring specifically to "the Defendant officers"), and so the court will not

consider the Dentist Defendants' limitations arguments as they pertain to that claim.

"A statute of limitations defense, while not normally part of a motion under Rule

12(b)(6), is appropriate where the allegations of the complaint itself set forth everything

necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an

action is untimely under the governing statute of limitations."  *Andonissamy v. Hewlett-Packard

Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (internal quotation marks omitted).  In this case, both

sides agree that the complaint provides the court with all the information it needs to rule on the

statute of limitations arguments.  Doc. 102 at 5; Doc. 108 at 5 n.3.

1.      Count I:  § 1983 Due Process Claim

As noted above, Count I alleges that Defendants violated Starks's due process rights by

fabricating inculpatory evidence and suppressing exculpatory evidence during the investigation

and trial, leading to his conviction and incarceration.  The parties agree that the statute of

limitations is two years and that Starks filed this suit on January 20, 2009.  Doc. 102 at 6; Doc.

108 at 6.  Thus, the claim is time-barred if it accrued prior to January 20, 2007.  Defendants say

it accrued in October 2006, when Starks was released on bond pending retrial on the sexual

assault charges.  Doc. 102 at 6.  Starks says that the claim accrued only when the criminal

proceedings against him were terminated in his favor, which happened, he says, when the

charges were dismissed *nolle prosequi* in May 2012 and January 2013.  Doc. 108 at 6.

Starks cites *Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008), which says that a *Brady* claim accrues when the plaintiff is "acquitted," and *Northfield Insurance Co. v. City of Waukegan*, 701 F.3d 1124, 1130-31 (7th Cir. 2012), which states that his due process claim accrued "on the day of [his] exoneration." *Northfield Insurance* arises out of the same facts as this case—it was an action by the City's insurers for a declaratory judgment that they had no duty to defend against Starks's suit. *Id*. at 1127. But Starks was never "acquitted," and it is not entirely clear whether he was "exonerated" when his convictions were vacated and a retrial ordered or only when the prosecutor dismissed the charges. *Northfield Insurance* appears to address this question, saying that "[i]f the prosecution was abandoned for reasons of Starks's innocence, then May 15, 2012 [when the aggravated sexual assault charges were dismissed *nolle prosequi*], is the trigger date for his malicious prosecution claim." 701 F.3d at 1131-32. By "malicious prosecution claim," the Seventh Circuit meant Starks's malicious prosecution, wrongful prosecution, and due process claims, which it was discussing collectively. *Id*. at 1130; *see Brooks*, 578 F.3d at 579 (holding that a § 1983 due process claim that "essentially contests the fairness of [the plaintiff's] prosecution … is … similar to his malicious prosecution claim, and 'claims resembling malicious prosecution do not accrue until the prosecution has terminated in the plaintiff's favor'") (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001)). Thus, *Northfield Insurance* indicates that Starks's due process claim accrued in May 2012, rendering the claim timely.

Even if this over-reads *Northfield Insurance*, the Dentist Defendants have failed to show that the due process claim is time-barred. They cite only two cases, *Wallace v. Kato*, 549 U.S. 384 (2007), and a district court opinion based on *Wallace*, *Johnson v. Garza*, 564 F. Supp. 2d 845, 849-50 (N.D. Ill. 2008). Both concern Fourth Amendment claims, not due process claims,

and the Seventh Circuit has held that "[a] *Brady* claim [which arises from the Due Process Clause] is not controlled by *Wallace* but rather by *Heck v. Humphrey*." *Johnson*, 515 F.3d at 782. In their reply brief, the Dentist Defendants say that they "cite to *Johnson*, not because this case involves a Fourth Amendment unlawful search claim, but rather, for its holding that the accrual of Plaintiff's causes of action is his release of custody on October 4, 2006." Doc. 110 at 2. What this fails to comprehend is that, as *Johnson* says, the rules governing the accrual of Fourth Amendment claims are different from those that apply to due process claims. The Dentist Defendants say that "Plaintiff has not argued against the holding in *Johnson* as to the accrual date of his § 1983 claims," Doc. 110 at 3, but that is wrong because Starks cites a case for the proposition that "*Wallace* has no application to a denial of due process claim," Doc. 108 at 6, and asserts (correctly) that *Johnson* is "inapposite" because it "discuss[es] the date of accrual of a Fourth Amendment unlawful search claim," *id*. at 5 & n.1. So Starks has amply rebutted the argument that the Dentist Defendants actually make: that his due process claim is time-barred under *Johnson* and *Wallace*. The Dentist Defendants' failure to cite pertinent authority to support their argument that the due process claim is time-barred forfeits the argument. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

In their reply brief, Defendants at last discuss a relevant precedent—*Heck*—and contend that "the *nolle prosequi* of May 15, 2012 and January 6, 2013 did not terminate the criminal proceedings in [Starks's] favor and thus" the claim must be dismissed under *Heck*. Doc. 110 at 5. For the reasons discussed above, on the facts alleged by Starks, the *nolle prosequi* dismissals *were* terminations in his favor and were indicative of his innocence. Accordingly, the Dentist Defendants have failed to establish that the due process claim is time-barred.

### 2. Count III: § 1983 Conspiracy Claim

The Dentist Defendants concede "that a federal conspiracy claim which rests upon a due process violation accrues at the same time, and has the same limitations period[,] as the underlying claim." Doc. 110 at 3. In light of that concession, and because Defendants do not contend that the conspiracy claim is time-barred if the underlying due process claim is not, their limitations challenge to the § 1983 conspiracy claim is rejected for the reasons just given with respect to the due process claim.

### 3. Count V: State Law Malicious Prosecution Claim

Defendants treat the malicious prosecution claim together with the due process and conspiracy claims. Because they have not made any separate argument that it is time-barred, and because the court has already rejected their contentions with respect to the due process and conspiracy claims, their limitations challenge to the malicious prosecution claim is also rejected.

In their reply brief, the Dentist Defendants argue for the first time that Count V should be dismissed because Starks has not adequately alleged that the dismissals *nolle prosequi* were for reasons indicative of his innocence. Doc. 110 at 5-7. By failing to introduce this argument prior to their reply brief, the Dentist Defendants forfeited it. *See Narducci*, 572 F.3d at 324; *Cromeens, Holloman, Sibert, Inc.*, 349 F.3d at 389. Even if the argument had been properly presented, the court would reject it for the same reasons given above with respect to the Police Defendants' similar argument.

### 4. Count VI: Intentional Infliction of Emotional Distress Claim

Starks concedes that Illinois law subjects intentional infliction of emotional distress ("IIED") claims to a one-year statute of limitations. Doc. 108 at 9. The Dentist Defendants contend that Starks's emotional distress claim accrued when he was convicted in 1986. Doc. 102

at 7.  Defendants are correct.  In *Brooks v. Ross*, *supra*, the Seventh Circuit held that although the plaintiff's malicious prosecution and § 1983 due process claims accrued only upon the favorable termination of the prosecutions, his emotional distress claim arising out of that prosecution accrued when he was indicted.  578 F.3d at 579.  Starks attempts to avoid that result by arguing that he "has alleged that his emotional distress claim is based on the continuing criminal prosecutions of him which lasted until May 15, 2012, and January 7, 2013, and that the dentist Defendants remained involved in those prosecutions by continuing to maintain that their reports linking Plaintiff to the bite mark on the victim were valid and reliable, and refusing to acknowledge that they did not have a sufficient basis to make that finding.  Thus, the IIED allegations against the dentist Defendants are based on the facts underlying the malicious prosecution claim and did not accrue until the prosecutions were terminated."  Doc. 108 at 8-9.  But *Brooks* addressed and rejected this argument:

> It is also clear that the continuing tort rule does not apply in this case.  The Supreme Court of Illinois has stated that "where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury."  The single overt act here is Brooks's indictment, even if the damages that Brooks suffered may have continued throughout his trial.  We therefore find Brooks's … state law … IIED claim[] time-barred.

578 F.3d at 579 (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003)).  Thus, although Starks continued to suffer harm from the Dentist Defendants' actions throughout his incarceration and up until the point when the last charge against him was dropped in January 2013, *Brooks* makes clear that the emotional distress claim accrued when Starks was indicted, not when he ceased to suffer continuing harm from those actions.

Starks cites *Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010), which held that an IIED claim "could not have [been] brought … until [the plaintiff's] conviction was disposed of

in a manner favorable to him" and therefore had not accrued upon conviction. *Id*. at 683-84. But *Parish* was discussing an emotional distress claim under Indiana law and is therefore inapposite here, where Illinois law is at issue. *Ibid*.

### 5. Count VII: State Law Civil Conspiracy Claim

As with their malicious prosecution argument, the Dentist Defendants treat their argument that Starks's state law civil conspiracy claim is time-barred along with their argument that his due process claim is time-barred. Doc. 102 at 5-7; Doc. 110 at 7. Accordingly, their limitations challenge to the civil conspiracy claim is rejected for the reasons given above with respect to the due process claim.

### B. The State Action Doctrine

The Dentist Defendants next contend that they are private actors who were not acting "under color of" state law when they performed the actions alleged, as required for liability under § 1983. Doc. 102 at 8-10. They do not explain *why* they think they were not acting under color of state law when they assisted the investigation and prosecution of Starks by asserting that the bite mark on M.G. had been made by Starks, Doc. 95 at ¶ 25. Precedent holds that "[a] private defendant acts 'under color of' state law for purposes of Section 1983 when it is 'a willful participant in joint action with the State or its agents.'" *Leahy v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 912 F.2d 917, 921 (7th Cir. 1990) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)) (brackets omitted). That description fits Starks's allegation that the Dentist Defendants "became involved in the prosecution when they were hired by the prosecution to compare an alleged bite mark on M.G. with the teeth of" Starks. Doc. 95 at ¶ 24. The Dentist Defendants do not argue to the contrary; they merely state in conclusory fashion that they were not acting under color of state law. They are not entitled to dismissal on that ground.

Like the Police Defendants, the Dentist Defendants point out that they enjoy absolute immunity for their trial testimony under *Briscoe v. LaHue*, *supra*. This is true, and so they cannot be held liable on the basis of ¶ 36 of the complaint, which alleges that they "testified falsely at Plaintiff's trial that the alleged bite mark on the victim could be reliably linked to Plaintiff to a reasonable degree of medical certainty when they knew that the information they had did not support such a statement." But as with the Police Defendants, the complaint includes other allegations against the Dentist Defendants that are not covered by *Briscoe*, Doc. 95 at ¶¶ 24-27, and so *Briscoe* does not require dismissal of any count of the complaint.

### C.    Count III:  § 1983 Conspiracy Claim

The Dentist Defendants next argue that the § 1983 conspiracy claim against them must be dismissed because its allegations are insufficiently concrete and specific to state a claim. The court rejects this argument for substantially the same reasons given above with respect to the Police Defendants' similar argument. As discussed above, Starks has adequately alleged that the Police Defendants, the Dentist Defendants, and Thomas-Boyd all made false statements intended to secure his conviction. A highly plausible inference from these allegations is that Defendants had all agreed among themselves to contribute to the effort to secure that conviction, as it is unlikely that each of them independently decided to lie to the prosecutors in order to send an innocent man to prison. *See Geinosky*, 675 F.3d at 749.

The Dentist Defendants rely heavily on *Cooney v. Rossiter*, 583 F.3d 967 (7th Cir. 2009). The plaintiff in that case, Cooney, was a mother who had "lost custody of her two sons after an Illinois state court found that she suffered from 'Munchausen syndrome by proxy,' in which an individual produces or feigns physical or emotional symptoms in another person under his or her care. Usually the victim is a young child, and the person producing the symptoms may be the

child's parent or caretaker, most often the mother." *Id*. at 969 (internal quotation marks omitted). Cooney had divorced her husband and been awarded custody of their two sons, but the ex-husband had filed a petition to transfer custody to himself. *Ibid*. The child custody court appointed a man named Bischoff to be the children's representative—a hybrid between a child's attorney and a guardian *ad litem*—and Bischoff appointed a man named Rossiter to be the children's psychiatrist. *Ibid*. Rossiter concluded that Cooney was exhibiting signs of Munchausen by proxy, the father's attorney asked the court for an emergency order of protection, and the court granted the order with the statement that Cooney was "armed and suicidal" and transferred custody to the father. *Id*. at 969-70. Cooney claimed that Bischoff had "orchestrated" a plot with the other persons just mentioned to deprive her of custody of her children, and sued all of them for conspiracy under § 1983. *Id*. at 970. The Seventh Circuit affirmed the dismissal of this claim under *Iqbal*, saying that the complaint was "bereft of any suggestion, beyond a bare conclusion, that the … defendants were leagued in a conspiracy …. No factual allegations tie the defendants to a conspiracy with a state actor." *Id*. at 971.

*Cooney* is inapposite. Central to *Iqbal* is the proposition that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. As discussed above, common sense permits the inference that Defendants were leagued together to deprive Starks of his constitutional rights; their parallel actions are otherwise difficult to explain. Moreover, the context-specific nature of the inquiry militates against reliance on *Cooney*, which the Seventh Circuit said was potentially "paranoid pro se litigation, arising out of a bitter custody fight and alleging … a vast, encompassing conspiracy." 583 F.3d at 971. Starks is not paranoid;

the Appellate Court of Illinois has credited his contention that his convictions resulted from false statements by Defendants. The § 1983 conspiracy claim therefore survives dismissal.

### D.     Count VI:  Intentional Infliction of Emotional Distress Claim

Finally, the Dentist Defendants contend that they are entitled to dismissal of the intentional infliction of emotional distress claim because they have absolute immunity for their testimony at his trial under Illinois law. Doc. 102 at 12-14. The court has already held that the Dentist Defendants are entitled to dismissal of this claim on limitations grounds, so this argument need not be considered.

### Conclusion

The Waukegan Defendants' motion to dismiss is granted with respect to the *Monell* and intentional infliction of emotional distress claims and otherwise is denied. The Dentist Defendants' motion to dismiss is granted with respect to the emotional distress claim and otherwise is denied. The dismissal of the emotional distress claim is with prejudice because the flaw in that claim, the statute of limitations, cannot be cured by repleading. *See Rosenfield v. HSBC Bank, USA,* 681 F.3d 1172, 1189-90 (10th Cir. 2012) (affirming the district court's rejection of the plaintiff's request for leave to amend where the amendment would have been futile because the claims were untimely); *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 353 (2d Cir. 1993) (same); *see generally Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012) ("District courts have broad discretion to deny leave to amend … where the amendment would be futile.") (internal quotation marks omitted). The dismissal of the *Monell* claim is without prejudice because it is possible that the flaw in that claim can be cured by repleading. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the

complaint to correct the problem if possible."); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("As a general matter, Rule 15 ordinarily requires that leave to amend be granted at least once when there is a potentially curable problem with the complaint or other pleading.").  If Starks wishes to replead the *Monell* claim, he must do so by June 11, 2013.

May 21, 2013

_____
United States District Judge