UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENNIE STARKS, | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 348 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| CITY OF WAUKEGAN, LIEUTENANT URBANCIC, W. BIANG, P. STEVENSON, M. JUAREZ, D. DEPREZ, DR. CARL HAGSTROM, DR. RUSSELL SCHNEIDER, and SHARON THOMAS-BOYD, | ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

In May, the court granted in part and denied in part Defendants' motions to dismiss Plaintiff Bennie Starks's amended complaint. __ F. Supp. 2d __, 2013 WL 2243089 (N.D. Ill. May 21, 2013). Familiarity with the memorandum opinion and order is assumed. Starks has moved for reconsideration of the portion of the order dismissing with prejudice his state law intentional infliction of emotional distress ("IIED") claim. Doc. 120.

Because final judgment has not been entered, the dismissal of the IIED claim is interlocutory, which means that Starks's motion to reconsider is governed by Federal Rule of Civil Procedure 54(b) rather than Rule 59(e). *See Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (explaining that "a traditional Rule 59(e) motion to reconsider … can only follow a 'judgment'" and that "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment"). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any

1

time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," unless a partial judgment is entered as to such an order. Fed. R. Civ. P. 54(b). Motions to reconsider an interlocutory ruling under Rule 54(b) are governed by the law of the case doctrine. *See Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) ("Unlike the case in which a *judgment* is sought to be vacated … a motion to reconsider a *ruling* is constrained only by the doctrine of the law of the case."); *Galvan*, 678 F.3d at 587-88 (same); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006) (same). The law of the case doctrine is "highly flexible, especially when a judge is being asked to reconsider his own ruling." *Pickett*, 207 F.3d at 407. Because the court believes that the IIED claim should not have been dismissed, and because reinstating that claim at this early stage of the litigation—although this is an old case, a stay was in place for years and lifted only in January 2013—will not materially upset settled expectations or reliance interests (if any) in the challenged ruling, the court grants Starks's motion and reinstates the IIED claim.

      The court dismissed the IIED claim on the ground that it is time-barred under the one-year statute of limitations imposed by Illinois law. 2013 WL 2243089, at *16-17. Starks maintains that the claim did not accrue until January 7, 2013, when the last remaining criminal charge against him was dismissed. Doc. 120 at ¶ 8. Starks's principal authority is *Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010), which holds, in reliance on *Heck v. Humphrey*, 512 U.S. 477 (1994), that where an IIED claim under Indiana law arises in part from a criminal conviction, the claim does not accrue "until [plaintiff's] conviction was disposed of in a manner favorable to him." 614 F.3d at 684. Central to the holding in *Parish* was the fact that the Indiana judiciary, in *Scruggs v. Allen County/City of Fort Wayne*, 829 N.E.2d 1049 (Ind. App. 2005), had adopted the *Heck* accrual rule for purposes of claims arising under Indiana law. 614

F.3d at 681-83. In dismissing Starks's IIED claim, this court distinguished *Parish* on the ground that the IIED claim there arose under Indiana law, not Illinois law. 2013 WL 2243089 at *17. For reasons that are unnecessary to explain but that cannot be blamed entirely on Starks, the parties' briefs on Defendants' motions to dismiss did not directly address whether the Illinois judiciary had adopted the *Heck* accrual rule for claims arising under Illinois law. The parties' reconsideration briefs do address that issue—as discussed below, Illinois has adopted the *Heck* rule—and so another look at *Parish* is warranted.

Like Starks, the plaintiff in *Parish* was convicted of very serious crimes and served several years in prison before the convictions were vacated on post-conviction review and the charges were dropped. 614 F.3d at 678. Parish then sued the police officers involved in the case, alleging that they intentionally framed him for the crime and then covered up their misconduct after his conviction. *Id.* at 683. The district court held that Parish's IIED claim had accrued at the time he was arrested, not when he was exonerated, and therefore that the claim was time-barred. *Id*. at 678. The Seventh Circuit reversed, holding that the claim did not accrue until Parish was exonerated. *Ibid*.

The Seventh Circuit first considered when an IIED claim accrues under Indiana law. The court observed that the Indiana judiciary in *Scruggs* had adopted the *Heck* accrual rule for claims arising under Indiana law, and noted that "[u]nder the *Heck* framework, a claim that directly attacks the validity of a conviction cannot accrue until after the conviction has been terminated in a manner favorable to the plaintiff." *Id*. at 681. Citing its own decision in *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), the Seventh Circuit recognized that the *Heck* rule was clarified by *Wallace v. Kato*, 549 U.S. 384 (2007), which held that "a claim that accrues before a criminal conviction may and usually must be filed without regard to the conviction's validity." 614 F.3d

3

at 682 (internal quotation marks omitted). The Seventh Circuit interpreted *Heck and Wallace* as follows:

> [W]e read these cases to rely on th[is] … distinction …: whether the claimed tort occurred and was completed before conviction—as would be the case with a claim for false arrest, false imprisonment, or IIED resulting from offensive behavior at the time of arrest—or the claimed tort was not complete prior to conviction—as would be the case with a claim for malicious prosecution or IIED resulting from actions that lead to a false conviction. If the claimed tort occurred and was completed before the conviction, …, the claims accrue immediately upon the completion of the tort. If the claimed tort continued through, or beyond, the point of conviction, the court must ask whether the claims would directly implicate the validity of the conviction. If the claims would not directly implicate the validity of the conviction, the court should follow the standard discovery rule applied in Indiana: The claim accrues at the time the individual knew or should have known of the tort. If the claim would directly implicate the validity of the conviction, then *Heck* and *Scruggs* come into play and the claim does not accrue until the conviction has been disposed of in a manner favorable to the plaintiff.

614 F.3d at 683 (citations omitted). The Seventh Circuit noted that the Indiana judiciary had adopted the same understanding of *Heck* and *Wallace*. *Id.* at 682-83 (citing *Johnson v. Blackwell*, 885 N.E.2d 25 (Ind. App. 2008)).

The Seventh Circuit then applied these accrual rules to Parish's claim. Parish alleged that the defendant officers "created a fake crime scene, fabricated evidence, tampered with evidence, destroyed or withheld exculpatory evidence, either actively suborned or deliberately turned a blind eye to perjured testimony, and testified falsely under oath, leading to his wrongful conviction," and then "covered up their actions to maintain [his] continued incarceration"; by this conduct, Parish maintained, the officers "intentionally or recklessly caused him severe emotional distress." *Id.* at 683. The Seventh Circuit held that Parish's IIED claim "was not complete prior to the time of conviction because the conviction was the crux of the case," reasoning that the officers "allegedly took steps through all stages of the investigation and trial that cumulatively amounted to the tort of IIED," and that "the conviction was an essential piece

4

of this tort because it was the wrongful conviction that led to the emotional strain and mental anguish that Parish faced." *Ibid*. The court then concluded that "the facts alleged to support Parish's claim of IIED directly attack the validity of the conviction," explaining: "At the heart of Parish's complaint is a claim that the defendant officers fabricated an entire case against him that led to his wrongful conviction. The factual allegations that Parish was innocent and that the officers committed perjury, falsified evidence, coerced witnesses to commit perjury, and withheld exculpatory evidence are all challenges to the conviction that would only have been proper while the conviction was still outstanding if Parish brought them through proscribed post-conviction relief channels." *Id*. at 684. It follows, the Seventh Circuit held, that *Heck* would not have allowed Parish to bring his IIED claim "until his conviction was disposed of in a manner favorable to him," and therefore that his claim was timely because it had been brought within two years (the Indiana limitations period) of his exoneration. *Ibid*.

Starks's IIED claim is, for all relevant purposes, identical to Parish's. Starks alleges that Defendants showed the victim a suggestive photo array and induced her to identify Starks as the perpetrator; improperly led the victim to change significant aspects of her story to match other evidence and undermine Starks's alibi; falsely reported that Starks had made certain inculpatory statements during unrecorded interviews; intentionally misapplied forensic techniques on the bite mark on the victim's body; falsely reported that Starks was the source of the semen recovered from the victim, even though the tests excluded Starks as a possible source; and testified falsely against him at trial. 2013 WL 2243089, at *1-4. Starks further alleges that "Defendants continued to conceal their misconduct and to cause the malicious prosecution of [him] on the sexual assault charges until the state *nolle prossed* those charges on May 15, 2012," and that "Defendants continued to conceal their misconduct and to cause the malicious prosecution of

5

[him] on the aggravated battery charge until the state *nolle prossed* that charge on January 7, 2013." Doc. 95 at ¶¶ 93, 95. As in *Parish*, Starks's IIED claim "was not complete prior to the time of conviction because the conviction was the crux of the case," the officers "allegedly took steps through all stages of the investigation and trial that cumulatively amounted to the tort of IIED," and "the conviction was an essential piece of this tort because it was the wrongful conviction that led to the emotional strain and mental anguish that Parish faced." 614 F.3d at 683. And as in *Parish*, the factual predicate of Starks's IIED claim directly attacks the validity of his convictions. *Id*. at 684. Accordingly, if the Illinois judiciary has adopted *Heck*, Starks's IIED claim would not have accrued until his exoneration and would have been timely because it was filed in January 2013, well within one year of the May 2012 dismissal of the sexual assault charges and the January 2013 dismissal of the aggravated battery charge.

The only remaining question, then, is whether the Illinois judiciary has adopted *Heck* for claims arising under Illinois law. It did so in *Lieberman v. Liberty Healthcare Corp.*, 948 N.E.2d 1100 (Ill. App. 2011), a case involving a medical malpractice claim brought by individuals who were diagnosed by the defendants as sexually violent persons and committed under the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207/1 *et seq*. Citing *Scruggs*, the Appellate Court of Illinois adopted *Heck* and held that the plaintiffs could not bring their medical malpractice claim unless and until they were found to have been wrongly committed. 948 N.E.2d at 1107-08. The appellate court reasoned that "a successful claim [by the plaintiffs] would be inconsistent with their lawful commitments," and that "[t]he adoption of the *Heck* scheme here avoids the inconsistent effect of awarding money damages for unlawful detention to lawfully confined plaintiffs." *Id*. at 1108. Because the Supreme Court of Illinois has not directly addressed whether to adopt the *Heck* accrual rule for claims arising under Illinois law, this court

may deviate from *Lieberman,* an intermediate appellate court case, only if "there are persuasive indications that the [state supreme court] would decide the [issue] differently." *Commonwealth Ins. Co. v. Stone Container Corp.,* 323 F.3d 507, 509 (7th Cir. 2003) (quoting *Allstate Ins. Co. v. Menards, Inc.,* 285 F.3d 630, 637 (7th Cir. 2002)). There being no such indications, persuasive or otherwise, the undersigned joins Judge Hamilton (who was writing separately and not for a panel) and Judge Kennelly in concluding that Illinois has adopted *Heck*. *See Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1137 (7th Cir. 2012) (Hamilton, J., concurring) (noting "Illinois's embrace of [the *Heck*] rule in *Lieberman*"); *Johnson v. Chibicki*, 2011 WL 5868010, at *2 (N.D. Ill. Nov. 21, 2011) (citing *Lieberman* for the proposition that Heck "applies with equal force to state law claims"). This last piece of the puzzle places this case on all fours with *Parish*, meaning that Starks's IIED claim is timely.

The two principal cases cited by Defendants do not warrant a different result. The first, *Barham v. McIntyre*, 2007 WL 1576484 (S.D. Ill. May 30, 2007), preceded and has been overtaken by *Parish*. The second, *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009), involved an indictment rather than a conviction, and thus had no occasion to consider application of the *Heck* accrual rule to the torts alleged there.

For these reasons, Starks's motion for reconsideration is granted, resulting in the reinstatement of his IIED claim.

August 16, 2013                                         _____
                                                         United States District Judge