UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENNIE STARKS, | ) |
| | ) |
| Plaintiff, | ) 09 C 348 |
| | ) |
| vs. | ) Judge Feinerman |
| | ) |
| CITY OF WAUKEGAN, LIEUTENANT URBANCIC, W. BIANG, P. STEVENSON, M. JUAREZ, D. DEPREZ, DR. CARL HAGSTROM, DR. RUSSELL SCHNEIDER, and SHARON THOMAS-BOYD, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| SHARON THOMAS-BOYD, | ) |
| | ) |
| Third-Party Plaintiff/Cross-Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| NORTHEASTERN ILLINOIS REGIONAL CRIME LABORATORY, | ) |
| | ) |
| Third-Party Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| CITY OF WAUKEGAN, | ) |
| | ) |
| Cross-Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Earlier this year, the court dismissed without prejudice the amended complaint's *Monell* claim against the City of Waukegan. 2013 WL 2243089 at *9-12 (N.D. Ill. May 21, 2013). The plaintiff, Bennie Starks, then filed a second amended complaint, which repleads the *Monell* claim. Doc. 133 at ¶¶ 80-92. The City has again moved to dismiss that claim. Doc. 137. The motion is denied.

1

To state a *Monell* claim, a plaintiff must allege "that an official policy or custom not only caused the constitutional violation, but was the moving force behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (internal quotation marks omitted). "An official policy or custom may be established by means of [1] an express policy, [2] a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or [3] through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). Starks pursues the "widespread practice" option, alleging that Waukegan police officers participated in at least nine other wrongful convictions from 1985-2012, the time period coinciding with his conviction and incarceration. Doc. 133 at ¶ 85. Starks's opposition brief, whose factual assertions must be considered in assessing the viability of his *Monell* claim, *see Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012), adds that the recently elected State's Attorney of Lake County, whose jurisdiction encompasses Waukegan, "has embarked on an investigation of at least five other wrongful conviction cases." Doc. 157 at 10.

Starks's allegation that Waukegan police officers are responsible for nine or more wrongful convictions is sufficient to plead a widespread practice for *Monell* purposes. To support the contrary view, the City cites *Gable v. City of Chicago*, 296 F.3d 531 (7th Cir. 2002), which held that three instances of unconstitutional conduct is "too few to indicate that [a] City had a widespread custom of which City policymakers had reason to be aware"; to support its holding, the Seventh Circuit explained that "three incidents where vehicle owners were erroneously told that their vehicles were not at Lot 6," out of a pool of 181,911 vehicles towed to

2

Lot 6, "do not amount to a 'persistent and widespread practice.'" *Id*. at 538. Here, by contrast, Starks alleges that the nine or more wrongful convictions "transpired in a small municipality with a correspondingly small police department and detective division," and that "[t]he frequent incidence of wrongful convictions in serious felony cases investigated by Waukegan officers … is wholly disproportionate to the population of the City of Waukegan, the total number of said cases that have been investigated by said police officers, and in comparison to the incidence of wrongful conviction cases in similar locales both in Illinois and nationally." Doc. 133 at ¶ 87; Doc. 157 at 11. Starks further alleges that Waukegan and its police department have "repeatedly ratified the longstanding pattern and practices [of covering up police misconduct] by consistently promoting those detectives and supervisors who participated and supervised this pattern and practice of misconduct, including … Defendants Juarez and Biang, who were ultimately promoted as successive Chiefs of Police." Doc. 133 at ¶ 89. Together with the supplemental factual allegations in his opposition brief, Starks has provided more than enough to save his *Monell* claim from dismissal on a Rule 12(b)(6) motion. *See Sledd v. Lindsay*, 102 F.3d 282, 289 (7th Cir. 1996) (holding that the district court improperly dismissed a *Monell* claim where the complaint alleged "that the City and [its police department] maintained a code of silence; that disciplinary complaints almost never resulted in official censure; and that this practice hurt [the plaintiff] … by making the officers believe their actions would never be scrutinized."); *see also Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 479-80 (7th Cir. 1997) (noting that the *Monell* claim in *Sledd* was "extremely detailed" in that it set forth "the number of excessive force complaints filed against the Chicago Police Department, the number of complaints which were investigated, and the number which the Police Department's Office of Professional Standards believed had merit").

3

The City objects that only one of the nine convictions listed in the second amended complaint has been proven wrongful. Doc. 137 at 4. The argument is misplaced at the Rule 12(b)(6) stage. In denying the present motion, the court does not and need not vouch for the truth of Starks's allegation that those nine convictions actually were wrongful. *See Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006) ("an obligation to allege some matter in a complaint does not entail an obligation to 'establish' that issue at the pleading stage; support of one's allegations comes later, in response to a motion for summary judgment or at trial"). At the pleading stage, the court must assume the truth of Starks's allegations—so long as they are not incredible on their face, which they are not—and for the reasons just stated, those allegations adequately ground his *Monell* claim.

The City also objects to the consideration of allegedly wrongful convictions that occurred after Starks himself was convicted in 1986. Doc. 137 at 4. That objection fails on two grounds. First, the alleged misconduct by Waukegan officials and employees in this case occurred from 1985 through 2012, during the entire course of Starks's state criminal proceedings and incarceration; wrongful convictions occurring during that period are fair game even under the City's understanding of the law. Second, and in any event, the City's understanding of the law is incorrect, as a *Monell* claim may rest on alleged constitutional violations that occur after misconduct at issue in that case. *See Sherrod v. Berry*, 827 F.2d 195, 204-05 (7th Cir. 1987) (affirming the admission of evidence regarding a separate suit alleging police misconduct, even though the incident giving rise to the separate suit occurred one month after the event upon which the plaintiff's claims were based), *vacated on other grounds*, 835 F.2d 1222 (7th Cir. 1988), *remanded for new trial*, 856 F.2d 802 (7th Cir. 1988) (en banc); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) ("although it occurred after [the plaintiff's]

4

experience, [the subsequent incident of alleged excessive force] may have evidentiary value for a jury's consideration [of] whether the City and policymakers had a pattern of tacitly approving the use of excessive force"); *Foley v. City of Lowell*, 948 F.2d 10, 14 (1st Cir. 1991) ("Contrary to the City's exhortation that the date an incident occurs marks the outside date for evidence-gathering on such an issue, we think that actions taken subsequent to an event are admissible if, and to the extent that, they provide reliable insight into the policy in force at the time of the incident.").

The City also argues that Starks has not adequately pleaded a failure-to-train claim. Doc. 137 at 5. The second amended complaint alleges that the "pattern of misconduct and wrongful prosecutions and convictions in such a small municipality also evidences grossly inadequate training, supervision, monitoring, discipline, counseling, and control of its officers by the City … and its Police Department." Doc. 133 at ¶ 90. The Supreme Court has held that "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [employees] come into contact." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). Moreover, "[a] pattern of similar constitutional violations by untrained employees" can "demonstrate deliberate indifference for purposes of [stating a] failure to train [claim]." *Id*. at 1360; *see also Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (a failure-to-train claim is viable "when a repeated pattern of constitutional violations makes the need for further training … plainly obvious to the city policymakers") (internal quotation marks omitted). Starks has alleged such a pattern of similar constitutional violations and, as noted above, adds that the City has exacerbated matters by promoting rather than disciplining officers responsible for those violations. Those allegations are sufficient at the pleading stage to state a viable failure-to-train claim under *Monell*. *See*

*Carter v. City of Philadelphia*, 181 F.3d 339, 358 (3d Cir. 1999) (holding that the plaintiff stated a *Monell* failure-to-train claim by "alleg[ing] that he spent ten years in prison as a result of a pervasive pattern of egregious, unconstitutional conduct by Philadelphia's police," and explaining that the plaintiff "surmise[d], reasonably, that such misconduct reflects inadequate training and supervision" and that he "cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted").

    For these reasons, the City's motion to dismiss the *Monell* claim is denied. This ruling of course does not suggest, one way or the other, whether Starks will succeed at summary judgment or at trial; that will depend on the evidence adduced in discovery or at trial, not on the pleadings.

October 31, 2013                              _____
                                                         United States District Judge