IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Bennie Starks, | ) | |
|       Plaintiff, | ) | |
| v. | ) | No. 09 C 348 |
| | ) | |
| City of Waukegan, and Present and Former | ) | |
| Waukegan Police Department Officials Lieutenant | ) | Judge Gary Feinerman |
| Urbancic, W. Biang, P. Stevenson and D. Deprez; | ) | |
| the Special Representative for Deceased former | ) | |
| Waukegan Police Department Official M. Juarez; | ) | |
| Dr. Carl Hagstrom, Dr. Russell Schneider, Sharon | ) | |
| Thomas-Boyd and Northeastern Illinois Regional | ) | |
| Crime Laboratory, formerly known as Northern | ) | |
| Illinois Police Crime Laboratory, | ) | |
| | ) | |
|       Defendants. | ) | |

## WAUKEGAN DEFENDANTS' LR 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants, CITY OF WAUKEGAN, WILLIAM BIANG, DAVID DEPREZ, and SPECIAL REPRESENT FOR DECEASED FORMER WAUKEGAN POLICE DEPARTMENT OFFICER, MIGUEL JUAREZ, by their attorneys, TROBE, BABOWICE & ASSOCIATES, LLC., pursuant to the Fed. R. Civ. P. 56 and L.R. 56.1, submit this Statement of Undisputed Facts in Support of Their Motion for Summary Judgment.

### PARTIES

1. Plaintiff, Bennie Starks, is a resident of the City of Chicago and County of Cook. (Plaintiff's Fourth Amended Complaint, par. 3.)

2. Defendant, William Biang, is a retired police officer for the City of Waukegan. (Ex. 1, Affidavit William Biang, ¶ 1.)

3. Defendant, David Deprez, is a retired police officer for the City of Waukegan. (Ex. 2, Affidavit David Deprez, ¶ 1.)

4. Defendant, Miguel Juarez, is deceased, and was a former police officer of the City of Waukegan. (FAC, ¶ 4.)

## FACTS

5. On January 19, 1986, Maria Gonzalez reported to City of Waukegan police officers that she had been attacked and raped by a black male on January 18, 1986. (FAC, ¶ 11.)

6. Police officers went to the scene of the attack and collected certain items of evidence, including a black coat, a scarf, a pair of black gloves, and a wristwatch. (FAC, ¶ 13.)

7. A cleaning ticket in the pocket of the coat led police officers to identify Plaintiff Bennie Starks as the owner of the coat. (Ex. 1, ¶ 3.)

8. On January 21, 1986, Plaintiff was interviewed by Defendant Biang at the Waukegan Police Department. During the interview, Bennie Starks indicated that the trench coat found at the scene of the attack belonged to him, but he had been robbed of several items on the night of the attack, including his coat, gloves and watch. (Ex. 1, ¶ 4.)

9. Subsequent to the interview with Plaintiff, Officer Defendants Biang and Juarez went to Victory Memorial Hospital and showed a photo line-up to Maria Gonzalez. Juarez conducted the interview in Spanish. Maria Gonzalez pointed to the photograph of the Plaintiff as the offender. (Ex. 1, ¶ 7.)

10. At approximately 1:45 p.m., after returning from the hospital, Officer Biang placed Plaintiff under arrest. Defendant Biang noticed scratch marks on Plaintiff's body and he photographed these marks. (Ex. 1, ¶ 8.)

11. On January 22, 1986, at approximately 8:20 a.m., Defendant Deprez interviewed Plaintiff after Plaintiff was given his Miranda rights. Plaintiff was asked about the scratches on

2

his body and he indicated that he must have fallen somewhere but denied that it came from the robbery. (Ex. 1, ¶ 8.)

## POST ARREST AND TRIAL

12. On January 22, 1986, Police Officer Anderson took photographs of bite mark impressions on the shoulder of Maria Gonzalez. Defendants Schneider and Hagstrom were present.

13. On January 24, 1986, a police officer submitted evidence for testing to the Northern Illinois Crime Laboratory. (Ex. 1, ¶ 9.)

14. On February 19, 1986, per Court order, Officer Biang and Defendant doctors Hagstrom and Schneider went to the Lake County Jail to get hair strands, blood samples, swab samples and dental impressions from the Plaintiff. The hair, blood and saliva samples were transported to the Northern Illinois Crime Laboratory for testing. Defendants Schneider and Hagstrom took the dental impressions. (Ex. 1, ¶ 10.)

15. Dr. Schneider worked completely independently. Waukegan Police Officers had no role "whatsoever in what we did." (Ex. 3, Schneider Dep., pp. 297-298.)

16. The Waukegan Police Officers had no involvement or input into the way in which Dr. Hagstrom conducted his examinations or input into his conclusions. He did not share his conclusions with the Waukegan Police Officers. (Ex. 4, Hagstrom Dep., pp. 163-164.)

17. The Waukegan Police Officers did not have any input into the way in which Sharon Thomas-Boyd performed her analysis, the procedures she employed, or conclusions. She did not review her findings with members of the Waukegan Police Department. (Ex. 5, Sharon Thomas-Boyd Dep., p. 267.)

18. On September 22, 1986, the case against Bennie Starks proceeded to trial. The photo identification procedure and results were not presented at trial by way of testimony or physical evidence. (Ex. 1, ¶ 11.)

19. Bennie Starks was convicted by the jury of aggravated criminal sexual assault, attempted aggravated criminal sexual assault and aggravated battery. (FAC, ¶ 41.)

20. Plaintiff did move to suppress his statements to police in a pretrial motion or during the trial. (Ex. 1, ¶ 12.)

21. Plaintiff appealed his conviction to the Second District Appellate Court. The photo line-up procedure was not raised as an issue in the appeal. (Ex. 6, Opinion of the 2nd Appellate District Court.)

22. In 2002, Plaintiff filed a motion for a new trial alleging that he was actually innocent, that post conviction DNA tests excluded him as a source of the semen that had been found in the victim's underwear and that Defendant, Sharon Thomas-Boyd, had made false statements and gave false testimony at Bennie Starks' trial. (FAC, ¶ 44.)

23. In 2004, the trial court denied Plaintiff's post-trial motion and refused to vacate his convictions. (FAC, ¶ 45.)

24. DNA testing revealed that Starks was not source of the semen and on March 23, 2006, the Illinois appellate court reversed the denial of Plaintiff's post-conviction motion and petition and vacated his convictions for aggravated criminal sexual assault, and remanded those cases for a new trial. (FAC, ¶ 46.)

25. On January 7, 2009, the Lake County State's Attorney's Office nolle prossed all criminal charges against Plaintiff. (FAC, ¶ 51.)

4

26. On February 5, 2009, subpoenas were issued to Waukegan Police Department for "M/B mug books", photo books and photo line-ups used in the Gonzalez investigation. (Ex. 7.)

27. On April 7, 2009, a representative of the Waukegan Police Department indicated that the mug books and photographs had been destroyed. (Ex. 8.)

## CIVIL ACTION

28. Plaintiff has identified one expert against the Waukegan Defendants, Roger Clark, a retired police officer and police procedures expert. (Plaintiff's Rule 26 Disclosure.)

29. Waukegan Defendants' method of conducting the photo line-up with Maria Gonzalez was appropriate: a) one photograph of Plaintiff was used; b) an appropriate number of "fillers" were used; c) all photos used were the in same format; d) a written report was issued which contained identification information on the photographs, the parties present, and the victim's own words during the identification. (Ex. 9, Clark Deposition, pp. 55 – 56.) A current photo of Plaintiff was used in the line-up procedure. (Ex. 1, ¶ 5.)

30. Clark has no opinion whether or not police used suggestive identification procedures in this case. (Ex. 9, p. 48, line 21.) Clark agreed that since the photo line-up was not introduced at trial, it had no effect on the verdict.

31. Clark did not see anything in the record that would have prevented Plaintiff's attorney from testing the validity of the photo line-up before or during trial. (Exhibit 9, p. 65.)

32. Waukegan Police Department could have produced the photographs used in the photo line-up either before or during the trial. (Ex. 1, ¶ 14.)

33. Plaintiff's defense attorney could have viewed the photographs used in the photo line-up prior to the trial. (Ex. 1, ¶ 13.)

34. Officers Biang and Juarez were available and did testify at the trial of Bennie Starks. Neither testified concerning the photo identification made by Maria Gonzalez. (Ex. 1, ¶ 11.)

35. Maria Gonzalez testified at the trial of Bennie Starks. She did not testify concerning the photo line-up procedure or identification. (Ex. 10, pp. 425-466.)

36. The Northern Illinois Police Crime Laboratory was an Illinois not-for-profit corporation which was incorporated on or about August 23, 1968. (FAC, ¶ 122.) the Northern Illinois Police Crime Laboratory was created as a result of an intergovernmental compact and/or pursuant to the Illinois Governmental Corporations Act between the City of Waukegan and one or more other municipal corporations and/or local public entities. (FAC, ¶ 124.)

37. At all times relevant, Sharon Thomas-Boyd was employed by the Northern Illinois Police Crime Laboratory. (Ex. 5, Dep. of Sharon Thomas-Boyd, pp. 265-268.)

38. Evidence was dropped off at the Northern Illinois Police Crime Laboratory by various police departments. Whoever was available would receive the evidence. (Ex. 5, p. 266.)

39. In the Bennie Starks case, Sharon Thomas-Boyd was not the one who received the evidence from Waukegan. (Ex. 5, p. 266.)

40. The only direct contact between the laboratory employees and the police departments was the receipt of the evidence. (Ex. 5, p. 267.)

41. The police departments did not have any input into how the scientists did their work, nor into the procedures that they employed. (Ex. 5, p. 267.)

42. The crime lab scientists worked independently of the police department. (Ex. 5, p. 267.)

43. In the instant case, Sharon Thomas-Boyd does not recall having any direct contact with the City of Waukegan or the City of Waukegan Police Department. (Ex. 5, p. 267.)

44. Sharon Thomas-Boyd did not review her findings with the police officers. (Ex. 5, p. 267-268.)

45. Deprez' trial testimony only consisted of his advising Starks of his Miranda warnings. (Ex. 11, pp. 677, 682.)

46. Biang's trial testimony consisted of the parts of the interview with Starks where he identified the coat from the scene and explained how he had been robbed. (Ex. 12, pp. 682-689.)

TROBE, BABOWICE & ASSOCIATES, LLC

By: _____
One of their attorneys

Peter M. Trobe (Atty. No. 2857863)
Michael D. Furlong (Atty. No. 6289523)
TROBE, BABOWICE & ASSOCIATES, LLC
404 West Water Street
Waukegan, IL 60085
847-625-8700

7