EXHIBIT 12

sitting at the bench to my right, wearing a lighter gray suit.

MR. BERRONES: I'd ask the record to reflect the witness identified the defendant.

THE COURT: The record will so show.

MR. BERRONES: No other questions, judge.

WILLIAM BIANG

having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. BERRONES:

Q Will you please state your name, and spell your last name?

A William Biang, B-i-a-n-g.

Q Are you employed?

A Yes, I am.

Q Who are you employed by.

A With of Waukegan Police Department.

Q How long have you been employed by the Waukegan Police Department?

A Eight and a half years.

Q What is your current position with them?

A Detective Sergeant.

Q Calling your attention to January 21st, 1986,

at approximately 6:50 p.m., were you employed by the Waukegan Police Department?

A Yes, I was.

Q On that date, did you have occasion to speak with Bennie Starks?

A I did.

Q Where did that conversation take place?

A In an interview room in the detective bureau.

Q Who was present when you talked to Mr. Starks?

A Myself and Bennie Starks.

Q Would you relate to us what Bennie Starks said to you, and what you said to him?

A Yes, I can. He said -- I asked him to relate his whereabouts on the night of the 18th of January. He said that he was drinking most of the day. He said he was at a bar on the west side of Waukegan, and that he was at the Genesee Inn, on Genesee Street, in Waukegan, until about 10:30, when he decided to walk home. He said that he was walking south on Genesee, and then west on Water Street. While on Water Street, walking westbound, approaching County, he was approached from behind by two subjects, one a male black, one a male hispanic. One of the subjects, he wasn't clear as to which one, said, "This is a robbery, give us all your money." He said the

subjects took approximately $80.00 in cash, his trench coat, a pair of gloves, and a wristwatch. I asked him if he could describe the subjects. And the only thing that he could remember, he said the spanish subject was short, and the black subject was tall. I asked him if he continued walking home, after he was robbed, he said that he ran home to his mother's house, on Lake Street. I asked him if he called the police. He said that he didn't because he didn't think the police would do anything for him. I asked him if he told his mother that he was robbed, and he said, "No, because she's sick, and I didn't want to get her upset."

At this time, I asked him if he had purchased any items at Regents Clothing Store on Genesee Street, in Waukegan, that day. And he stated that he had. I asked him what he purchased. And he said he purchased a beige men's sweater. I then asked him if the package that he had received the item in, and carried the item in, was red in color. And he said it was. I asked him if he had the package with him while he was drinking at the Genesee Inn, and he said that he did. At this point, I said, "Well, when you were walking home, did you have the package with you when you were robbed?" And he said, "No, I dropped the package off earlier at my mother's

house, prior to that."

Q Was your --

A Go ahead.

Q When you were having this conversation with him, did he indicate to you what time he left the bar?

A He said he left the bar at approximately 10:30, with the package in his hand.

Q Now, when he told you that he ran to his mother's house, did he tell you where his mother's house was located, what address?

A He said it was located at 300 Lake Street.

Q Did you show the defendant a coat while you were talking to him?

A Yes, I did.

Q What coat did you show him?

A I showed him a black trench coat, with the brand name of Campus, I believe it was a size 40. It was recovered at the -- in the ravine, and was identified by the victim as being the coat worn by the offender.

Q I show you what's been marked as People's Exhibit Number --

MR. BOYD: I'd like all that barred that went past what --

THE COURT: I'll sustain what the victim says. And

the jury will disregard it.

BY MR. BERRONES:

Q I show you what's been marked as People's Exhibit Number 17, and ask you if that was the same coat that you showed the defendant on January 21st?

A Yes, it is.

Q When you showed him that coat, did you ask him anything?

A I asked him if it was his coat.

Q What, if anything, did he say?

A He said that it was.

Q Did you see Bennie Starks later on that day, on January 21st, 1986?

A He was in the interview room the entire evening, from 6:40 on.

Q Okay, at 11:45, did you place Bennie Starks under arrest that evening?

A That's correct.

Q And when you placed him under arrest, did you ask him to remove his clothing?

A Yes, I -- Well, I, first, had asked him what he was wearing on the night that was in question, on the [illegible] And he said that he was wearing the same things that he had on at this time, which was a beige sweater, a

pair of bluejeans, I believe, a pair of work boots, pair of long underwear, pair of blue underpants. At this time, we took those items of clothing for possible evidence.

Q Okay. Did you examine his body after he removed his clothing?

A Yes, we did.

Q What was the reason for examining his body?

A To ascertain if there were any injuries that could have possibly been obtained from the defendant -- or from the victim defending herself, or anything that might have been indicative of a struggle.

Q Did you examine Bennie Starks' body that night?

A Yes, we did.

Q Okay, is the person that you examined, and got that statement from, is that person in court today?

A Yes, he is.

Q Would you please point to that person, and describe something they're wearing?

A Seated at the defense table, wearing a gray tie, white shirt, and gray sports coat, beige shoes.

MR. BERRONES: Your honor, I'd ask the record to reflect the witness identified the defendant.

THE COURT: The record will so show.

BY MR. BERRONES:

Q Sergeant Biang, I'm showing you what's been marked as People's Exhibit Number 60 for Identification, and ask if you recognize that?

A This is a photo taken in the interview room, by myself, the Evidence Technician Tench. Also present were Detective Duprez, and Lieutenant Phil Stevenson. It's a photograph of a scratch on the defendant's upper righthand shoulder.

Q Does that picture truly and accurately depict the condition of the defendant's upper righthand shoulder on January 21st?

A Yes, it does.

Q Showing you what's been marked as People's Exhibit Number 61 for Identification, and ask if you can identify that?

A A photo taken of the scratch marks on the defendant's right wrist, also in the interview room.

Q Does that picture truly and accurately depict the injuries to the defendant?

A Yes, it does.

Q Showing you what's been marked as People's [illegible] identify that?

A Another scratch mark to the defendant's right wrist, also taken in the interview room.

Q Does that truly and accurate depict the condition of the defendant's wrist on January 21st, 1986?

A Yes, it does.

Q Showing you what's been marked as People's Exhibit Number 63 for Identification, and do you recognize that?

A Yes, I do. It's a photo of a scratch mark on the upper righthand buttock of the defendant, which was also taken in the interview room.

Q Does that picture truly and accurately depict the condition of the defendant?

A Yes, it does.

MR. BERRONES: Your honor, at this time, the people would ask that People's Exhibits Number 60 through 63 be admitted into evidence, the identifying marks being stricken.

MR. BOYD: No objection.

THE COURT: We'll admit them in evidence, the identification marks will be stricken.

MR. BERRONES: I have no other questions, judge.

THE COURT: Counsel?

MR. BOYD: Judge, I don't have a single solitary

question.

Thank you very much.

THE COURT: You may step down.

(Whereupon the witness was excused.)

MR. BERRONES: Judge, the state has no other witnesses, I'd ask to submit all my exhibits before I rest.

THE COURT: I take it you're going to rest other than the exhibits?

MR. BERRONES: That's correct, judge.

THE COURT: All right, take the jury out.

(Whereupon the following proceedings were had out of the presence of the jury:)

MR. BERRONES: Your honor, at this time, I ask that People's Exhibit Number 42 for Identification be admitted into evidence, based on the stipulation.

THE COURT: Any objection?

MR. BOYD: No.

THE COURT: It will be admitted into evidence.

MR. BOYD: Judge, can I see those photographs that he just had?

MR. BERRONES: Judge, at this time, the state resubmits Exhibits 1 through 13 into evidence, and ask that they be admitted into evidence.