# BOLLINGER
### BOLLINGER CONNOLLY KRAUSE

Robert S. Tengesdal
Attorney at Law
rtengesdal@bollingertrials.com
312.466.0049

February 19, 2015

*Via Email and U.S. Mail*

John L. Stainthorp
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60642

Peter Trobe
Michael D. Furlong
Trobe, Babowice & Associates, LLC
404 West Water Street
Waukegan, Illinois 60085

Theodore Karavidas
33 North Dearborn Street
Suite 502
Chicago, Illinois 60602

James L. DeAno
DeAno & Scarry, LLC
53 West Jackson Boulevard
Suite 740
Chicago, Illinois 60604

     Re:    ***Benny Starks v. City of Waukegan, et al.***
             Court No.    09 CV 348
             <u>Our File No.   33483-006STAR</u>

Dear Counsel:

    Defendants, Russell Schneider, D.D.S. and Carl Hagstrom, D.D.S.' Rule 26(a)(2)(B) Disclosure:

    1.    Report of Lowell J. Levine, D.D.S. dated February 17, 2015. The February 17, 2015 report is attached, together with the additional materials required by Rule 26(a)(2)(B).

BOLLINGER CONNOLLY KRAUSE LLC
500 West Madison Street ♦ Suite 2430 ♦ Chicago, Illinois 60661-2593
(312) 253-6200 ♦ Facsimile (312) 253-6201
www.bollingertrials.com


EXHIBIT
A

February 19, 2015
Page 2

       Please let me know if you contend that any of these productions are not fully in compliance with Rule 26(a)(2)(B), and I will remedy any legitimate concerns.

       Please let me know if you wish to depose Dr. Levine and I will schedule the deposition. If you do wish to depose Dr. Levine, please note that pursuant to Rule 26(b)(4)(D) and (E), the expert must be paid for all time spent responding to discovery, prior to the deposition proceeding.

Very truly yours,

Robert S. Tengesdal

RST/sd
Enclosure

MDK/RST/ljw                          33483-006-STAR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BENNIE STARKS,                          )
                                        )
      Plaintiffs,                   )
                                        )
      v.                            )
                                        )        No. 09 CV348
CITY OF WAUKEGAN, et al.                )
                                        )
      Defendants.                   )

### CERTIFICATE OF SERVICE

      I hereby certify that on **February 19, 2015**, I served the foregoing:

- DR. CARL HAGSTROM AND DR. RUSSELL SCHNEIDER'S
  RULE 26(a)(2)(B) DISCLOSURES

to all counsel of record via electronic mail and via first class mail, postage prepaid, from Citicorp
Center, 500 West Madison Street, Chicago, Illinois 60661.


_____
Attorneys for Defendants, Dr. Carl Hagstrom
and Dr. Russell Schneider

Michael D. Krause
Robert S. Tengesdal
Bollinger Connolly Krause, LLC
500 West Madison Street, Suite 2430
Chicago, Illinois 60661
(312) 253-6200

## SERVICE LIST

*Bennie Starks v. City of Waukegan, et al.*
Court No. 09 CV 348

***Attorneys for Plaintiff***
John L. Stainthorp
Joey L. Mogul
G. Flint Taylor
People's Law Office
1180 North Milwaukee Avenue
Chicago, Illinois 60642
Tel:     (773) 235-0070
Fax:     (733) 235-6699
Email: stainthorp@aol.com
          joeymogul@aol.com
          flint.taylor10@gmail.com

***Attorneys for City of Waukegan, Urbancic, Biang, Stevenson, Juarez and Deprez***
Peter Trobe
Michael D. Furlong
Trobe, Babowice & Associates, LLC
404 West Water Street
Waukegan, Illinois  60085
Tel:     (847) 625-8700
Fax:     (847) 625-8708
Email: ptrobe@tralaws.com
          mfurlong@tbalaws.com

***Attorney for Sharon Thomas-Boyd***
Samuel A. Kavathas, Jr.
Kavathas and Castanes
33 North Dearborn Street, Suite 502
Chicago, Illinois  60602
Tel:     (312) 332-1700
Fax:     (312) 332-0654
Email: sam@k-c.net
          Karen@k-c.net

Theodore Karavidas
33 North Dearborn Street, Suite 502
Chicago, Illinois  60602
Tel:     (312) 520-7616
Fax:     (847) 832-1215
Email: tgklo@aol.com

*Attorneys for Northeastern Illinois Regional Crime Laboratory*
James L. DeAno
Laura L. Scarry
Debra A. Harvey
Collin D. Woodward
DeAno & Scarry, LLC
53 West Jackson Boulevard, Suite 740
Chicago, Illinois 60604
Tel:     (630) 690-2800
Fax:     (312) 564-4125
Email: jdeano@deanoscarry.com
         lscarry@deanoscarry.com
         dharvey@deanoscarry.com
         cwoodward@deanoscarry.com

LOWELL J. LEVINE, D.D.S.
240 Bentwood Court West
Albany, N.Y. 12203
518-452-8830

Lowell Levine, D.D.S., acting in accordance with 28 U.S.C. §1746, Rule 26(a)(2)(B) Fed. R. Civ. P. and Rules 702 and 703, Fed. R. Ev., does hereby declare and say in this report:

My name is Lowell Levine. I am a resident of Albany, New York. I am a general dentist and a forensic odontologist. I am licensed to practice dentistry in the State of New York.

I practice as a forensic consultant in odontology. I am licensed as a dentist in the State of New York. I am employed currently as Director, Medicolegal Investigations Unit for New York State Police Forensic Investigation Center. I have been certified by the American Board of Forensic Odontology since February 1976.

I have testified as a forensic odontology expert in state and federal courts in the United States.

A comprehensive Curriculum Vitae (CV) is attached to this declaration as Addendum (#1). This CV includes additional information about my background and qualifications. Also attached as Addendum (#2) is an itemized accounting of my time working on this case. As addendum (#3) I have listed the cases where I have served as an expert.

I have reviewed Rule 702 of the Federal Rules of Evidence. As I understand this rule, I am an expert in the field of forensic odontology.

## MATERIALS REVIEWED

I have been provided certain materials for review and consideration by attorneys for Defendants Russell Schneider, DDS and Carl Hagstrom, DDS. These materials are helpful in

1

developing my opinions pursuant to Rule 26(a)(2)(B)(ii).  Among the materials that I have reviewed are:

    a.   Deposition Transcripts

- Defendant, Russell Schneider, 9/19/2014, including the following exhibits:
  - o Ex. 1, Russell Schneider's Answers to Plaintiff's Interrogatories
  - o Ex. 2, Waukegan Police Department Report dated 1/22/1986
  - o Ex. 3, Waukegan Police Department Report dated 1/29/1986
  - o Ex. 4, Notes of Dr. Schneider dated 2/5/1986
  - o Ex. 5, Russell Schneider's Testimony from criminal trial of Bennie Starks
  - o Ex. 6, Photographs of MG's shoulder depicting bitemark (copies of Exhibits 39 and 40 from criminal trial of Bennie Starks).
  - o Ex. 7, Photographs of MG's shoulder depicting bitemark
  - o Ex. 8, Print of slides used at criminal trial during Russell Schneider's testimony
  - o Ex. 9, ABFO scoring sheet
  - o Ex. 10, Dr. Schneider and Dr. Hagstrom's May 19, 1986 letter
  - o Ex. 11, Dr. Schneider and Dr. Hagstrom's July 1, 1986 letter
  - o Ex. 12, Dr. Pretty and Dr. Senn's May 10, 2010 report
  - o Ex. 13, emails

2

- o Ex. 14, emails

- o Ex. 15, emails

- o Ex. 16, emails

- Defendant, Carl Hagstrom, 10/8/2014, including the following exhibits:

  - o Ex. 1, Carl Hagstrom's Answers to Plaintiff's Interrogatories

  - o Ex. 2, Carl Hagstrom's Testimony from criminal trial of Bennie Starks

  - o Ex. 3, Photograph of MG's shoulder depicting bitemark

  - o Ex. 4, Photograph of MG's shoulder depicting bitemark

- Denise Murmann, 8/14/2014, including the following exhibits:

  - o Ex. 1, Subpoena for Deposition to Denise Murmann

  - o Ex. 2, Email from plaintiff's counsel with image of teeth models, sent to Dr. Senn by Denise Murmann

  - o Ex. 3, Images sent from Denise Murmann to Dr. Senn of making teeth models

  - o Ex. 4, Denise Murmann's CV

- Dr. David Senn, 1/8/2015, including the following exhibits:

  - o Ex. 1, Defendants' Subpoena to Dr. Senn

  - o Ex. 2, Notice of Videotaped Deposition of Dr. Senn

  - o Ex. 3, Powerpoint Slides entitled "Errors in Orientation and Analysis of a Bitemark by Drs. Hagstrom and Schneider in IL v Starks"

3

- o Ex. 4, December 2, 2014 letter from Dr. Senn to John Stainthorp
- o Ex. 5, Dr. Senn's 12/1/2014 CV
- o Ex. 6, photograph of MG (head, right side)
- o Ex. 7, photograph of MG (legs)
- o Ex. 8, photograph of MG (head, left side)
- o Ex. 9, "Bennie Starks Timeline" prepared by Dr. Senn
- o Ex. 10–27, document entitled "Bitemark in IL v. Bennie Starks"
- o Ex. 28, "Statement of Pretty and Senn Regarding the Bitemark Evidence in the matter of The People of the State of Illinois vs. Bennie Starks"
- o Ex. 29, "Statement of Pretty and Senn Regarding the Bitemark Evidence in the matter of The People of the State of Illinois vs. Bennie Starks (Revised) May 10, 2010"
- o Ex. 30, "Statement of Pretty & Senn in the matter of Bennie Starks for the Innocence Project, N.Y."
- o Ex. 31, photograph of MG's shoulder depicting bitemark
- o Photographs, including marks by Dr. Senn, of Ex. 32, exemplar of maxillary and mandibular teeth
- o Ex. 33, Itemization of fees of Dr. Senn relative to *Starks v. City of Waukegan*, provided in response to Rider to Deposition Subpoena

4

- Plaintiff, Bennie Starks, 1/22/2014, including all exhibits:

- Luis Berrones, 7/28/2014; including all exhibits:

- Michael Mermel, 6/13/2014; including all exhibits:

- Steven Anderson, 10/29/2014; including all exhibits:

- William Biang, 3/27/2014; including all exhibits:

b. Testimony from Criminal Trial of Bennie Starks of the following individuals:

- MG

- Russell Schneider

- Carl Hagstrom

- William Biang

- Stipulation of Steven Anderson

c. Transcripts of the State's and Starks' closing arguments from the Criminal Trial of Bennie Starks

d. The Sentencing Hearing from Criminal Trial of Bennie Starks;

e. The following exhibits from Bennie Starks' criminal trial (both in person and photographs of the exhibits):

- Ex. 1–13, photographs of MG

- Ex. 39–42, photographs of the MG's bitemark taken on 1/22/1986 by Steven Anderson with the assistance of Russel Schneider and Carl Hagstrom

- Ex. 43–45, photographs of Bennie Starks' teeth

- Ex. 46–48, photographs of dental impression procedure performed by Russel Schneider and Carl Hagstrom on Bennie Starks

- Ex. 49–50, photographs of the dental impressions of Starks' upper and lower arch

- Ex. 51–52, life-size dental casts of Bennie Starks' upper teeth

- Ex. 53–54, wax imprint of Bennie Starks' dental cast

- Ex. 55–56, X-rays of wax dental imprint of Bennie Starks' upper teeth

- Ex. 57–58, transparency of wax imprint of Bennie Starks' upper teeth

f. The following sets of photographs:

- 34 photographs produced in Defendant Russel Schneider and Carl Hagstrom's Rule 34 Second Supplemental Disclosure on August 13, 2014;

- Photographs of criminal trial evidence taken by Defendants pursuant to November 20, 2013 Order by Judge Bridges in Lake County Circuit Court;

- 11 photographs produced by plaintiff on July 30, 2014, disclosed as materials reviewed by Dr. Senn;

- 23 photographs produced by Plaintiff on January 5, 2015, disclosed as materials reviewed by Dr. Senn;

g. The Curriculum Vitae of the following individuals:

- Russell Schneider

- Carl Hagstrom

- David Senn

- Ian Pretty

h. The following reports authored by David Senn and/or Ian Pretty:

6

- "Statement of Pretty and Senn Regarding the Bitemark Evidence in the matter of The People of the State of Illinois vs. Bennie Starks"
- "Statement of Pretty and Senn Regarding the Bitemark Evidence in the matter of The People of the State of Illinois vs. Bennie Starks (Revised) May 10, 2010"
- Powerpoint Slides entitled "Errors in Orientation and Analysis of a Bitemark by Drs. Hagstrom and Schneider in IL v Starks"
- December 2, 2014 letter from Dr. Senn to John Stainthorp

i. The following pleadings and discovery in *Bennie Starks v. City of Waukegan, et al.*:
- Plaintiff's Fourth Amended Complaint
- Russell Schneider and Carl Hagstrom's Answer to Plaintiff's Fourth Amended Complaint
- Russell Schneider's Amended Answers to Plaintiff's Interrogatories
- Carl Hagstrom's Answers to Plaintiff's Interrogatories
- Bennie Starks' Answers to Interrogatories

j. Waukegan Police Department Reports (95 pages, number LB1 thorugh LB95)

k. Reports of the Northern Illinois Police Crime Lab, prepared by Defendant Sharon Thomas-Boyd, dated 1/26/1986; 2/28/1986; 3/5/1986; and 4/10/1986

l. Records from Victory Memorial Hospital regarding MG, dated 1/22/1986

m. The following reports of Dr. Schneider and Dr. Hagstrom:
- Dr. Schneider and Dr. Hagstrom's May 19, 1986 letter
- Dr. Schneider and Dr. Hagstrom's July 1, 1986 letter

7

All of the above referenced materials have been produced in discovery by the parties in this case. Deposition transcripts have been available to all parties of record. At the trial of this matter pursuant to Rule 26 (a)(2)(B)(iii), I may use the above referenced materials as exhibits to summarize or support my opinions in this matter.

## FORENSIC ODONTOLOGY

Forensic Odontology is the identification discipline based upon the recognition of unique features present in each person's dental structures. Forensic odontology relies on the detailed knowledge of the teeth and jaws possessed by a dentist. This skill incorporates an education in dental anatomy, radiographs and their interpretation, pathology, dental materials, developmental anomalies and a familiarity through education, training and experience with the many methods of forensic odontology including bite mark analysis. In forensic odontology, a bite mark is a pattern injury usually in the skin of the victim. It is a mirror image. Human skin can capture the unique and individual characteristics of the teeth that caused the injury. Portions of the pattern can be more or less distorted or missing entirely. Dentists in their dental and forensic dental education and training acquire skill sets to interpret bite mark patterns. Half of the practice of dentistry is looking at mirror images. The basis of comparing radiographs (x-ray films) or pathology slides is pattern recognition. Dentists in their education, training and in clinical practice are used to seeing distortion in radiographs and accounting for that distortion.

Comparison of bite mark patterns in skin or other materials involves a dentists interpretation of the patterns: looking for similar shapes, in similar locations, in similar relationship to each other. This interpretation of patterns results in opinion testimony. As a result, interpretation of bite mark patterns in death investigations is not as great a challenge as

8

the interpretation of bite mark patterns in living victims. Bite marks found on living victims begin healing from the time of infliction of the bite and subsequently is continually changing. Nevertheless, a forensic odontologist is able to interpret bite mark injuries on healing victims.

A forensic odontologist, in his analysis determines how unusual and unique the characteristics of the teeth are that caused the bite mark injury in attempting to identify or exclude and individual or individuals as the biter. Cognitive psychology has shown that sometimes novices do better than experts in this analysis.

## AGGRAVATED BATTERY

The aggravated battery to Maria Gonzalez was reported to the Waukegan Police Department (WPD) at or around 23:00 hours on January 18, 1986. Among her injuries, Ms. Gonzalez was beaten with fists and a pipe to her face, injuries to her legs and a human bite mark was inflicted by her perpetrator to the area of her left lateral shoulder amongst other injuries. She was transported to Victory Memorial Hospital. Physical evidence left at the scene; a dry cleaning tag in a black coat found at the scene, circumstantial evidence and the identification of Bennie Starks as the assailant by the victim Maria Gonzalez led to the arrest and charging of Bennie Starks with crimes against Maria Gonzalez on January 21, 1986.

Some person or entity made the determination that the bite mark on Maria Gonzalez's left shoulder should be examined, documented and analyzed by a forensic dentist. Drs. Schneider and Hagstrom responded to Victory Memorial Hospital on January 22, 1986 to examine Maria Gonzalez and document the bite mark to her left shoulder and obtain evidence needed for comparison if possible. Due to the policies, practices and procedures of the WPD in effect in

9

January 1986, the police department required that evidence technician officer Anderson photograph the injuries to Maria Gonzalez's person on January 22, 1986. The photographing of the bite mark of Maria Gonzalez with and without scale was performed by WPD officer/technician Anderson while Dr. Schneider held the ruler for scale adjacent to the bite mark in the same plane as the injury. It should be noted that due to the natural curvature of the shoulder, the shoulder is a difficult area to get perfect photographs to be used for comparisons. In the course of Drs. Schneider and Hagstrom's evaluation and examination, Maria Gonzalez informed the doctors through a Spanish interpreter as to her and her attacker's orientation at the time the bite was inflicted to her left shoulder. (Hagstrom Depo. P. 38). On February 19, 1986, Drs. Schneider and Hagstrom evaluated Bennie Starks and performed all necessary procedures in order to conduct a forensic odontology evaluation.

It appears from the WPD reports that some Polaroid photos of the bite mark were taken by the WPD when neither Drs. Schneider nor Hagstrom were present. The Polaroid photos were never used in the evaluation by Drs. Schneider and Hagstrom as neither doctor was informed of their existence or shown the Polaroid photos at any time including up to the present.

## OPINIONS

The following opinions are provided to a reasonable degree of medical, dental, forensic odontologic and scientific certainty.

A. The bitemark lesion to Maria Gonzalez's shoulder that occurred on January 18, 1986 was evaluated, documented and analyzed by Dr. Russell Schneider and Dr. Carl Hagstrom is that of a human bite mark.

B. Prior to January 1986, both Dr. Russell Schneider and Dr. Carl Hagstrom had completed the following dental and forensic odontologic education: (1) accredited dental school education that led to their Doctor of Dental Surgery degrees and licensure in Illinois as

dentists; and (2) forensic odontology classes/seminars that included analysis and interpretation of bite marks. In order to practice forensic odontology, a dentist has never been required to be board certified in that specialty. In January 1986, it was within the standard of care for both Dr. Schneider and Dr. Hagstrom to hold themselves out as being qualified based on education, training and experience to perform forensic bite mark analysis. It is my opinion that both dentists were qualified in 1986 to perform forensic bite mark analysis.

C.  An essential basis to render any opinions as to the standard of care of forensic odontology analysis of bite marks that existed in 1986, is that the person rendering such opinions was actually qualified by their education, training and experience in forensic odontology bite mark analysis prior to January 1986. I was Board Certified by the American Board of Forensic Odontology in February 1976 having received certificate number 7. As stated above in opinion B, both Dr. Schneider and Dr. Hagstrom had the requisite education, training and experience in forensic bite mark analysis in 1986. Dr. David Senn cannot render any opinion on the standard of care, means , methods or procedures of forensic bite mark analysis in 1986, since by his own admission, Dr. Senn had never taken a forensic odontology bite mark class until at least 1992. Dr. David Senn is not qualified by his education, training or experience to render opinions as to the standard of care, means, methods, procedure or policies for forensic bite mark analysis as they existed in 1986.

D.  Dr. Senn, in his May 10, 2010 report, in section 4.5 states: The highest level of conclusion afforded by the ABFO guidelines for bitemark comparisons in 1986 was "reasonable medical certainty". This is in apparent reference to Dr. Senn's comments in section 4.4 of his report regarding the May 13, 1986 letter to the Lake County prosecutor stating "definite match" and July 1, 1986 letter "...a very specific and unusual pattern leading us to the conclusion that the bite on Maria Gonzalez was inflicted by Bennie Starks Jr." First, both Dr. Schneider and Dr. Hagstrom testified at the criminal trial of Bennie Starks in 1986 that their opinions were to reasonable degree of medical certainty. Dr. Senn's apparent criticisms of May 13, 1986 and July 1, 1986 letters were never presented to the jury during the criminal trial of Mr. Starks. Reasonable degree of medical certainty was the standard for testifying at trial under the ABFO guidelines in 1986. Both Dr. Schneider and Dr. Hagstrom testified at trial in accordance with ABFO guidelines. Second, Dr. Senn, during his deposition on page 297 testified that he could not define reasonable degree of medical certainty. He incorrectly testified that it means "what a reasonable and approximately same educated dentist would do under the same or similar circumstances". (P.297 Depo Senn). This is a partial standard of care definition. Dr. Senn, at his deposition could not define the standard for a forensic odontologist to testify at trial.

E.  It is against established forensic odontology standards and practices to arrive at an opinion before all of the physical evidence is examined and evaluated. Here, Dr. Senn and Dr. Pretty prepared at least two reports prior to their May 10, 2010 report in which they arrived at opinions and conclusions. In partial defense to Drs. Senn and Pretty, they had asked Starks attorney, Christopher Plourd, to view the models and exemplars from

the Bennie Starks criminal trial. Dr. Senn testified that attorney Christopher Plourd had represented that the criminal trial evidence including models and exemplars were not available. This was false as the materials were in the possession of the Lake County Court House. Drs. Senn and Pretty arrived at opinions and conclusions in their reports prior to May 10, 2010 without conducting a proper and complete forensic evaluation of the available criminal trial evidence.

F. Drs. Schneider and Hagstrom utilized appropriate forensic procedures on January 22, 1986 in their investigation, documentation and collection of evidence from the bite mark on Maria Gonzalez's left shoulder at Victory Memorial Hospital. Orientation of the bite mark was obtained by the dentists learning through a Spanish interpreter of the position of M.G. and her attacker at the time the bitemark was inflicted. The orientation obtained by the dentists is consistent with M.G.'s statement that she was battered with fists and a pipe in her face by her attacker and that the attacker attempted to put his penis in her mouth as the attacker would need to be in front of her. On page 98 of his deposition, Dr. Senn acknowledged that other than Dr. Pretty and himself, no other person has testified or stated that M.G.'s attacker was behind her at the time she was bitten. The photographs of the bite mark taken by WPD officer/technician were done under the supervision of Dr. Schneider. In the photographs (Trial Exhibits #39 and #40), Dr. Schneider's hand can be seen holding the scale (ruler) adjacent to the bite mark in the same plane and orientation as the bite mark in order that the photograph can be used at a later date to create scaled 1:1 scaled/life sized images. Dr. Schneider at his deposition testified that the scale was in the same plane. The bite mark is in the center of the photographs as it should be. The shoulder area, given its anatomic rounded contours is a difficult area to photograph. The scale (ruler) is located in the periphery of photograph (Trial Exhibit #40) as was the usual custom and practice in 1986. Although the scale/ruler in the periphery is not as focused as the center bite mark, it nevertheless is of diagnostic forensic quality in the proper plane and orientation that allows a 1:1 scaled comparison to be made. The scale/ruler had been placed by Dr. Schneider in accordance with 1986 standards. Similarly, there is no indication in the evidence that WPD officer/technician Anderson, under the direction of Dr. Schneider, did not take photographs of the bite mark and scale/ruler other than within the same plane, angle and orientation as the bitemark injury. Trial Exhibit #40 showing the bite mark with scale/ruler was done to a 1:1 ratio and enabled Drs. Schneider and Hagstrom to perform their analysis and reach their opinions that were testified to at the criminal trial of Bennie Starks. This photograph contains sufficient information for Drs. Schneider and Hagstrom to arrive at the opinions they did.

G. Dr. Russell Schneider and Dr. Carl Hagstrom performed their analysis of the bite mark utilizing the methodology and procedures that were standard of care in 1986. Dr. Senn, in his deposition on page 195 agreed that Drs. Hagstrom and Schneider went through the appropriate forensic steps that they had learned in their forensic classes at Northwestern University. Dr. Senn further agreed that there were no steps in the forensic analysis performed by Drs. Schneider or Hagstrom that deviated in any way from practices and protocols in 1986. Dr. Senn admitted on page 247 of his deposition that he did not duplicate the techniques utilized by Drs. Schneider and Hagstrom prior to arriving at his opinions or conclusions. It is important in this case to understand that the guidelines in

12

use in 1986 were the standards by which forensic dentists evaluated bite marks. Forensic dentistry, like all of the healing arts, evolves over time and changes with advances in technology, methodology and procedures. The 1986 analysis of the bite mark and subsequent testimony at trial by Drs. Schneider and Hagstrom cannot now be judged by policies, procedures, techniques, guidelines and methodologies utilizing 2008, 2009, 2010, 2011, 2012, 2013, 2014 or 2015 standards that incorporate state of the art modern imaging, scale and computer based techniques. Any such comparison is critically flawed when evaluating standards of practice during a given time period. Dr. Senn, in his deposition, on page 140 admitted that he looked at the 1986 evidence with 2009 eyes. Dr. Senn also used scaled photographs and scaled images of exemplars created from copies of the original models to make comparisons which he conceded were accepted techniques in 2008 and 2009 but not 1986. (Senn Depo 278). This is an improper comparison given that he admitted in his deposition on page 138 that standards and protocols of forensic odontology have evolved since 1986.

H. The techniques utilized by Drs. Schneider and Hagstrom to conduct their forensic analysis of taking photographs of the bitemark, photos of suspects dentition, creation of acetates, impressions, radiographs, transparencies, overlays, models and other forensic techniques in their analysis based upon my inspection of the criminal trial evidence was the standard of care for 1986. It should be noted that over the passage of time the criminal trial evidence has shown signs of deterioration and wear as would be expected. As stated previously, a comparison of current techniques and methodologies to those in use in 1986 is a deviation in forensic analysis. There is no evidence to suggest that overlays used by Drs. Schneider and Hagstrom were not 1:1. The comparison techniques used in 1986 were the standard of forensic odontology practice in 1986.

I. Bennie Starks was arrested by the Waukegan Police Department on January 21, 1986. Drs. Schneider and Hagstrom were not involved in the case until January 22, 1986. M.G. had identified Bennie Starks as her attacker prior to January 22, 1986. Probable cause to arrest Bennie Starks did not include any evaluation, history, examination or findings of Drs. Schneider or Hagstrom.

J. Dr. Schneider and Dr. Hagstrom each conducted their own individual interview, examination and review of the forensic dental evidence before coming to their opinion that Benny Starks was the biter of M.G. Dr. Senn, on page 148 and 213 of his deposition agreed that the dentists each had autonomy for their evaluation. Dr. Senn also agreed on page 211 of his deposition that there is no evidence of any communication with Police regarding the procedures the dentists did with respect to their bitemark analysis. Bennie Starks was in police custody arrested on probable cause prior to the dentist defendant's involvement in the case. It is inconceivable that Dr. Schneider and Dr. Hagstron could have been directed in any manner in their forensic bitemark analysis by persons unlicensed in dentistry and untrained in forensic odontology.

K. The dentist defendants completed an ABFO scoring sheet during their evaluation in 1986. As Dr. Senn testified (p.276), it was the ABFO that adopted and approved of the scoring sheet for use in forensic bitemark evaluation in 1986. After 1986, the ABFO

13

subsequently came to the opinion that the scoring sheet had a subjective component to it and withdrew the sheet from use. In 1986, it was accepted and recognized practice by the ABFO to complete a scoring sheet when doing forensic bitemark analysis. Here, a scoring sheet was completed utilizing the proper orientation and subjective evaluation of the examiners. The fact that the scoring sheet was withdrawn by the ABFO subsequent to 1986, and the dentist defendant's trial testimony, cannot now in retrospect be criticized as an unacceptable technique or practice in 1986.

L.  The ABFO has never published for the number or type of unique characteristics that must be present before a forensic odontologist can perform a forensic bitemark analysis that leads to a match of a suspect's dentition to a reasonable degree of medical certainty. (Dr. Senn agreed in his deposition on p. 267). Mr. Starks dentition, specifically teeth numbered 6 and 8, gave Mr. Starks a very unusual set of teeth that provided unique identifiers. The irregularity of teeth is subjective and varies amongst experts. (Senn Depo. P.268). Mr. Starks had a right upper maxillary peg shaped canine for tooth number 6. The peg shaped canine of tooth 6 was a very small pointed canine. A peg shaped canine at tooth number 6 is exceedingly rare. Tooth 8, a right central incisor, had a chip in it on the facial incisal edge. This provided an additional unique identifier. A scraping with the chip on tooth 8 would leave a discernible pattern on skin. Dr. Senn agreed that teeth 6 and 8 were unique identifiers on p. 159-161, 163 and 269 of his deposition. It is my opinion that there were sufficient unique class identifiers within the bitemark injury for Drs. Schneider and Hagstrom to undertake a bitemark comparison leading to an opinion that those teeth would have caused the pattern that they interpreted.

M.  After performing a complete forensic analysis, Drs. Schneider and Hagstrom each arrived at their opinions independently. They both determined based upon a reasonable degree of medical certainty that there were sufficient unique and rare identifiers in Mr. Starks dentition to match to the bitemark in M.G.'s shoulder to allow for an identification that Benny Starks was the person who inflicted the bitemark on M.G's left shoulder on January 18, 1986. The dentist defendants are the only experts to have had the opportunity to visualize in 3D the bitemark on M.G.'s shoulder with their own eyes to determine orientation, color, size, depth, length and width of the bitemark. This is the best evidence. A comparison with the original models and acetates is also the best evidence for forensic comparison.

The testimony of Dr. Schneider detailed the step by step forensic evaluation. Dr. Schneider first determined if all of Starks teeth were present and if they fit size wise to the bitemark. (P. 163 Trial Transcript). He then looked to determine if there were any unusual characteristics, angulation, spacing and size of the teeth. (Id.). In making his comparison, Dr. Schneider found a lot of points of similarity. (P.164 Trial Transcript). Relevant findings included: lower teeth in suspects mouth were all present and same width cuspid to cuspid; the same bite on the acetate was the same size as on the photograph; the teeth were all in the same relative position on the bite as they were on the acetate as well as the upper teeth that were present on the upper bite mark were present on the acetate in Starks mouth. (P.164 Trial Transcript). Unusual characteristics showed up as well. Dr. Schneider identified two characteristics that were highly unusual. The

first was tooth 6 the peg shaped canine. (P.165 Trial Transcript). The second unusual tooth was tooth 8, the right central incisor which had a broken chip on the biting surface. (P.165 Trial Transcript). The acetate and model of tooth 8 and its chip left a scraping mark exactly in the area of the drag mark in the bite on M.G.'s shoulder. (P.165 Trial Transcript). The peg shaped canine was depicted in the bite as a very small pointed and linear mark which matched exactly Starks dentition. (P.165 Trial Transcript). Dr. Schneider was also able to evaluate the bruised areas of the upper and lower teeth to orient them. (P.170 Trial Transcript). The lower bite was not as well defined as the upper teeth. (P.171 Trial Transcript). ·Dr. Schneider was able to match the lower teeth including arch in the bitemark. (P.171 Trial Transcript). He was also able to match the upper teeth to the model which provided a much more descriptive example of how Starks upper maxillary teeth made the marks on the bite. (P.171 Trial Transcript). The upper teeth, including the two unique identifiers of teeth 6 and 8 created marks that allowed orientation. (P.172 Trial Transcript). Although not contained in his trial testimony, Dr. Hagstrom conducted the same evaluation and arrived at the same orientation and unique identifiers present on the models and acetates that lined up the bite mark with Starks dentition.

I had the opportunity to evaluate the criminal trial evidence including but not limited to photographs, radiographs, reverse acetates and dental casts/models. Drs. Schneider and Hagstrom used dental model and acetates of Starks dentition to determine if they matched the bitemark. Using dental models and acetates over the patterned injury was the standard of care, appropriate and the established method of comparison in 1986 and still to this day. The unique identifiers of teeth numbers 6 and 8 described by the dentists are demonstrated in the models/casts. I was able to determine that teeth 6 and 8 did leave unique identifying marks in the bitemark on M.G.'s shoulder depicted in the photographs (Trial Exhibits 39 and 40) when compared to the dental model. The identifiable marks in the bitemark were made by maxillary teeth and not mandibular teeth. Calipers used to measure the distance from tooth 6 to tooth 9 on the dental model matches the unique identifier marks of the bitemark. The odontologic evidence does support the opinion of Drs. Schneider and Hagstrom that Bennie Starks did inflict the bitemark on M.G.'s shoulder. Dr. Senn had the opportunity to verify the testimony of Drs. Schneider and Hagstrom by performing the same measurements from teeth 6 through 9 but chose not to do so. (Senn Depo. P. 175).

It is unknown as to why Drs. Senn and Pretty in their May 10, 2010 report in figure 4 chose to outline maxillary teeth 7, 8, 9 and 10 as there is no competent evidence that those four teeth are depicted in the bitemark. Rather, the bitemark on M.G. contains aspects of teeth 6, 7, 8 and 9.

N. I agree with Dr. Senn that Bennie Starks cannot be excluded as the biter of M.G. (Senn Depo. P. 234, 266).

O. Drs. Schneider and Hagstrom had the opportunity to personally visualize and interpret the bitemark inflicted on M.G.'s shoulder at hospital in 3D in person in 1986. The criminal trial evidence has shown evidence of wear over the years since 1986. Based upon my

15

review of the case and inspection of criminal trial evidence as outlined above, I have no reason to disagree with Drs. Schneider and Hagstrom that the quality and character of the forensic odontology evidence as it existed in 1986 was sufficient to perform a bitemark analysis. I agree with the orientation of the bitemark that was determined by Drs. Schneider and Hagstrom that the perpetrator bit her from the front. The class characteristics seen in the linear abrasions are consistent with the unique identifiers found in the maxillary teeth of Bennie Starks. I was able to personally see the characteristics the dentists used to arrive at their opinion. Therefore, I disagree with the conclusions and opinions reached in the May 10, 2010 report as well as the December 2014 report of Dr. Senn. I agree with the orientation of the bitemark that was determined by Drs. Schneider and Hagstrom that the perpetrator bit her from the front.

P. It has never been the standard of care for forensic odontologists to independently revisit cases where they have given prior testimony. It has also never been the standard of care that a forensic odontologist apply modern techniques to old cases where different forensic techniques were used. Indeed, other than a death penalty case where he was specifically asked to perform an analysis, Dr. Senn has never revisited any of his prior criminal testimony cases. There is no professional obligation to do so. If Dr. Senn believed there was an obligation to do so, he could have contacted the Lake County States Attorney's Office. By his own admission, he has not done so. Both Dr. Schneider and Dr. Hagstrom testified in their depositions that they cannot provide an opinion as to whether they would have subsequently testified or reached opinions or conclusions different than they did in 1986. In order to have opinions at any time other than those in 1986 when they performed their forensic analysis, they would need to perform another independent evaluation of the evidence and utilize techniques and methods of the subsequent time period. They have clearly not done such an analysis on the forensic evidence in possession of the court and have reached no opinions or conclusion other than what the evidence demonstrated in 1986 after employing utilizing accepted methods and techniques in use in 1986. Dr. Hagstrom and Dr. Schneider maintain to this day that in 1986 they conducted a thorough and complete forensic odontologic evaluation of the evidence and reached their respective opinions to a reasonable degree of medical certainty which they testified in accordance with at the criminal trial of Bennei Starks. I agree with their opinions. Any subsequent review should only be performed by a forensic odontologist that has no knowledge of any subsequent activity that occurred. Any subsequent analysis can only be performed if the examiners knowledge is limited to that of 1986 and not the subsequent history of the case.

Q. There is no evidence that either Dr. Schneider or Dr. Hagstrom in their forensic analysis, trial testimony or at any time whatsoever ever intentionally misapplied any methodology, falsely reported to prosecutors, lied, testified falsely at court, communicated, created or took part in the creation of false, fabricated, manipulated, altered or manufactured evidence or testimony. Dr. Senn, plaintiff's own dental expert agreed as much in his deposition on pages 76-81. Dr. Senn testified that he believes that Dr. Schneider and Dr. Hagstrom did their forensic analysis in good faith. I have seen no evidence that in their forensic analysis and testimony that Drs. Hagstrom and Schneider did not act in any

16

manner other than in good faith and complied with the standard of care for their forensic odontologic policies, procedures and methods as they existed in 1986.

R. It was Dr. Senn's opinion under oath at a Frye hearing in New York that Drs. Schneider and Hagstrom just didn't have enough knowledge of analysis to do a complete job. (Senn Depo. P. 74). Dr. Senn is of the opinion that the two dentists did not have enough experience. (Senn Depo. P. 70). While I disagree, as outlined above, regarding their credentials and experience, such criticism does not rise to the allegations of intentionally misapplying methodology, falsely reporting to prosecutors, lied, testified falsely at court, communicated, created or took part in the creation of false, fabricated, manipulated, altered or manufactured evidence or testimony. I agree with Dr. Senn as well that in legal cases it is not uncommon that experts employed by the prosecution and defense reviewing the same evidence will arrive at different opinions in good faith.

S. There is no evidence that either Dr. Schneider or Dr. Hagstrom's forensic analysis or trial testimony contained any element of bias. The scientific literature by Cognitive Psychologist Itiel Dror shows that sometimes novices actually do better because of cognitive biases.

T. The photographs and testimony in this case indicate that M.G. was battered all over her body on January 18, 1986. I have seen no evidence that Bennie Starks criminal conviction for aggravated battery was based in whole, or in any part, due to the bitemark on her left shoulder as opposed to injuries she sustained throughout her body, including her face.

U. I have seen no evidence in this case that Drs. Schneider or Hagstrom conspired in any way by communication or otherwise in their forensic odontologic evaluation of the bitemark, pre-trial activities, trial testimony or post-trial. The dentists at all times acted independent of each other and others.

V. The slide presentation at the criminal trial of Bennie Starks was used solely to demonstrate the opinions of Drs. Schneider and Hagstrom. The dentists did not arrive at their opinions by the use of slides.

I declare under penalty of perjury that the Rule 26 (a)(2)(B) report preceding is true and correct. Executed February 17, 2015, at Albany, New York.

Respectfully submitted,

Lowell J. Levine, D.D.S.

17