IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BENNIE STARKS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 CV 348 |
| v. | ) | Hon. Judge Feinerman |
| | ) | |
| CITY OF WAUKEGAN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT RUSSELL SCHNEIDER AND CARL HAGSTROM'S MOTION
TO STRIKE CERTAIN OF PLAINTIFF'S ADDITIONAL FACTS PURSUANT
TO L.R. 56.1(b)(3)(C)**

NOW COMES Defendants, DR. RUSSELL SCHNEIDER and DR. CARL HAGSTROM, by and through his attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, and in support of their and Motion to Strike Certain Additional Facts Pursuant to L.R. 56.1(b)(3)(C), state as follows:

**INTRODUCTION**

Many of the statements in Plaintiff's Statement of Additional Facts (Doc. 350) do not comply with Local Rule 56.1 because they are irrelevant, argumentative, mischaracterization of documents which speak for themselves, legal conclusions, conclusory, are not concise, and most of all, do not contain support from Plaintiff's citations to the record. Accordingly, the Court should strike all noncomplying statements in Plaintiff's Statement of Facts and refuse to consider them in support of Defendant's Motion for Summary Judgment.

## RELEVANT AUTHORITY

Local Rule 56.1(b)(3)(C) requires the party opposing a motion for summary judgment to file a response, which shall contain "a statement [of additional facts], *consisting of short numbered paragraphs*, of any additional facts that require the denial of summary judgment, including *specific references to the affidavits*, parts of the record, and other supporting materials relied upon."

"Specific reference" means including proper Bluebook citations to exact pieces of the record that support the factual contention contained in the paragraph. *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). Factual allegations not properly supported by citation to the record are nullities. *Id.* Further, "the numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response . . . it is inappropriate to confuse the issues by alleging multiple facts in a single paragraph in hopes of one's opponent missing one." *Id.*

Statements of fact that are inadequately supported by, mischaracterize, over-generalize, or misstate the evidence cited may be properly stricken or ignored by the district court. *Freight Train Adver., LLC v. Chi. Rail Link, LLC*, 2012 U.S. Dist. LEXIS 162330, 8-9 (N.D. Ill. 2012); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005).

The court may and should strictly enforce Local Rule 56.1. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[w]e have repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions"). Whether they seek or oppose

summary judgment, parties have a right to expect that Local Rule 56.1 will be enforced and that facts not properly presented under the rule will be disregarded. *Renta v. Cnty. of Cook*, 2011 U.S. Dist. LEXIS 7269, 2011 WL 249501, at *1-2 (N.D. Ill. 2011).

**ARGUMENT**

**I.      The Court should strike Plaintiff's Statements of Additional Fact that are overly-complex.**

Dr. Schneider and Dr. Hagstrom move to strike Plaintiff's Statements of Additional Facts Nos. 2, 3, 5, 7, 8, 10, 23, 24, 27, 34, and 39 on the grounds that said statements are overly-complex in violation of Local Rule 56.1(b)(3)(C), which requires the opposing party's statement of additional facts to consist of "short, numbered paragraphs." *See Malec*, 191 F.R.D. at 583. Each of these statements are overly-complex, often containing several sentences and over 150 words each, and containing a number of separate allegations meriting separate responses. (Doc. 350). Accordingly, Plaintiff's Statements of Additional Facts Nos. 1, 2, 3, 5, 7, 14, 15, 17, 19, 20, 21, 23, 24, 25, 26, 27, 28, 33, 34, 37, and 40 (or specific portions thereof) should be stricken as violations of Local Rule 56.1(b)(3)(C) and not considered by the Court.

**II.     The Court should strike Plaintiff's Statements of Additional Fact that are not supported by, misstate, or mischaracterize the cited evidence on record, or which present legal conclusions rather than specific facts.**

In a transparent effort to manufacture an issue of fact, Plaintiff's statement of additional facts contain numerous "facts" that simply do not contain evidentiary support from Plaintiff's citations to the record, misconstrue such citations, take deposition testimony out of context, or offer legal conclusions rather than statements of fact, as set forth in detail *infra*. Drs. Schneider and Hagstrom object to each on this basis, and ask

that each fact (or specific non-conforming portion the fact) be stricken and refused to be considered in support of Plaintiff's Response to Dr. Schneider's and Dr. Hagstrom's Motions for Summary Judgment. *Sebastian v. City of Chicago*, No. 05 C 2077, 2008 WL 2875255 at *1 n. 1 (N.D. Ill. July 24, 2008) (refusing to consider statements of fact that do not contain support from the record); *see also Malec*, 191 F.R.D. at 583 ("Factual allegations not properly supported by citation to the record are nullities.").

**<u>Statement of Fact No. 1</u>: Plaintiff Bennie Starks is completely innocent of any and all crimes committed against Maria Gonzalez, including aggravated criminal sexual assault, attempt aggravated sexual assault, aggravated battery and unlawful restraint.** Bennie Starks Deposition, Exhibit 1, at 74, 76-77, 114-15, 212-13, 278-79. (Doc. 350, ¶ 1).

The only evidentiary support for Statement of Fact No. 1 is Plaintiff's deposition testimony. This testimony, alone, does not establish that he is completely innocent of any and all crimes committed against MG, especially including aggravated battery. A non-moving party's statement of additional facts must adequately cite to materials in the record. Local Rule 56.1(b); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). However, self-serving statements, without factual support in the record will not defeat a motion for summary judgment. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) ("Self-serving statements alone, however, are insufficient to survive a motion for summary judgment."); *Slowiak v. Land O'Lakes*, 987 F.2d 1293, 1295 (7th Cir. 1993). The only facts supporting Plaintiff's alleged "innocence" are his own self-serving statements in his deposition, which are insufficient, since this statement of fact refers to no other factual support in the record. *Id.*; *Hall*, 276 F.3d at 345. All that these cited statements establish is the Plaintiff *claims* he is innocent.

Furthermore, Plaintiff's guilt or innocence is not an issue of material fact that can be properly asserted in a Statement of Facts under Local Rule 56.1. The obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify "*specific facts* that establish a genuine issue for trial." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). Rather that identifying a specific fact with adequate evidentiary basis in the record, Plaintiff's statement that he is "completely innocent of any and all crimes" is a sweeping, conclusory proposition that assumes the benefit of countless underlying questions of law and fact. It is, in fact, a legal conclusion, rather than a statement of fact. "Legal argumentation is not an expression of fact, and therefore not appropriately included in a Rule 56.1 Statement of Facts." *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985). Further, this legal conclusion does not "aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz*, 634 F.3d at 899. Accordingly, this statement should be stricken by the Court and not considered as an issue of material fact in deciding the parties' Motions for Summary Judgment.

**Statement of Fact No. 2: On January 18, 1986, at approximately 10:30 - 11:00 p.m., as he was walking from a bar to his mother's house at 300 Lake Street Waukegan, Bennie Starks, who was not intoxicated, was attacked by two men in the vicinity of Water and County Streets in the City of Waukegan, and was robbed of his black coat (which contained his gloves and scarf), watch, $80 and a red bag containing a sweater that he had purchased that afternoon, and in the course of the attack he sustained scratches to various parts of his body.** Exhibit 1, Starks, 31-32, 97-99, 112, 119-24, 128. **At the time of the attack, Bennie Starks was 26 years old, 5-9 in height, and had short curly hair, a light beard and an established mustache.** Exhibit 2, Arrest Card 1/21/86; Exhibit 3, photographs of Bennie Starks taken at time of arrest. (Doc. 350, ¶ 2).

Plaintiff's statement that he was robbed is supported solely by citation to his own self-serving deposition testimony, wherein he claims that he was robbed. However, self-serving statements, without factual support in the record will not defeat a motion for summary judgment. *Hall*, 276 F.3d at 354; *Slowiak*, 987 F.2d at 1295. The only facts supporting Plaintiff's allegation that he was robbed are his own self-serving statements in his deposition, which are insufficient, since this statement of fact refers to no other factual support in the record. *Id.*; *Hall*, 276 F.3d at 345. Accordingly, this statement (apart from the portion "At the time of the attack, Bennie Starks was 26 years old, 5-9 in height, and had short curly hair, a light beard and an established mustache") should be stricken.

**Statement of Fact No. 3: On the night of January 18, 1996 Maria Gonzalez, who was 69 years old and lived at 200 Lake Street in Waukegan, left her home wearing only her nightgown, underpants and slippers and was attacked in the vicinity of Lake and Utica Streets in Waukegan, by a single black male who was 18-19 years of age with no facial hair who was carrying the red bag that had been stolen from Starks and had Bennie Starks' black coat draped over his left arm and Starks' watch on his wrist.** Exhibit 4, Tr. T/S 345, 430-31, 442, 443, 445, 713-14. **The man hit Gonzalez repeatedly in her face and forcibly raped her, placing his penis in her vagina three to four times, placing his penis on her face, attempting to force her to put his penis in her mouth and biting her on her left shoulder.** Exhibit 4, Tr. T/S 440-41, 434-45, 447. **Gonzalez ripped off the watch from the attacker, who left the coat, containing the scarf and gloves, in the ravine.** Exhibit 4, Tr. T/S 354, 448. (Doc. 350, ¶ 3).

The Court should strike Plaintiff's statement that MG was attacked by a black male "who was 18-19 years of age with no facial hair," as this fact is not established in the cited trial testimony. Rather, the cited testimony of Sgt. Juarez establishes that, when he interviewed MG in the hospital, MG *told* Sgt. Juarez her attacker had no facial hair and was "approximately 18-19 years of age." (Plaintiff's Ex. 4, Tr. T/S pp. 713–14).

This testimony does not establish that MG's attacker was, in fact, 18-19 years of age, and should accordinly be stricken.

The Court should also strike Plaintiff's statement that red bag "had been stolen from Starks." The cited trial testimony does not reference any robbery of Bennie Starks, and accordingly this portion of the statement should be stricken.

The Court should also strike Plaintiff's statement that the man "forcibly raped [MG], placing his penis in her vagina three to four times, placing his penis on her face, attempting to force her to put his penis in her mouth." The cited trial testimony does not establish the actions occurred. Rather, the cited trial testimony establishes only the MG testified to these actions at trial. Thus, this portion of the statement should be stricken.

**Statement of Fact No. 5:** **At 2 a.m. on January 19, 1986, Maria Gonzalez was admitted to Victory hospital where it was noted that she needed a translator and she was observed to be "very traumatized and very upset," "her face, her eyes were swollen. She had quite a few abrasions on her body, arms, legs, back. She was very dirty. And her clothing was very dirty. But she was badly beaten about the head, and the face, neck area."** Exhibit 4, Tr. T/S 406, 410. **At 5 a.m., in response to a Spanish-speaking hospital worker, Maria Gonzalez stated that she had been raped and a Vitullo sexual assault kit was collected and turned over to the police.** Exhibit 4, Tr. T/S 401-06. (Doc. 350, ¶ 5).

The Court should strike Plaintiff's statement that "At 5 a.m., in response to a Spanish-speaking hospital worker, Maria Gonzalez stated that she had been raped." The cited testimony, of Nurse Bliss O'Connor, does not establish that MG told a hospital worker she was raped. Accordingly this portion of the statement should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 7:** **On January 21, 1986, Starks voluntarily went to the Waukegan Police Department, signed a Miranda waiver and spoke to Defendant Biang and informed him that he had been attacked on his way home on the night of September 18, 1996, that his coat (containing his scarf and gloves) had been stolen, along with his watch, $80 and the red bag, and that he had not attacked Maria Gonzalez, but Biang prepared and filed a police report in which he falsely claimed**

**that Starks was inconsistent in his accounts of the attack on him, had at one point denied that the red bag had been stolen from him in the robbery and stated instead that he had taken it to his mother's house earlier that evening, claimed that the scarf and gloves found at the scene of the attack on Maria Gonzalez were not his, and in which he did not note that Starks denied that he had attacked Gonzalez "because it did not seem germane to the facts at the time."** Exhibit 5, Biang, 15-23, 49; Exhibit 1, Starks 181-189; Exhibit 6, Biang Report 1/21/86. (Doc. 350, ¶ 7).

The cited testimony fails, entirely, to establish that Sgt. Biang "prepared and filed a police report in which he falsely claimed that Starks was inconsistent in his accounts of the attack on him, had at one point denied that the red bag had been stolen from him in the robbery and stated instead that he had taken it to his mother's house earlier that evening, claimed that the scarf and gloves found at the scene of the attack on Maria Gonzalez were not his." The only citation that tends to suggest that Sgt. Biang falsely prepared a report is Plaintiff's own speculative testimony, explaining the discrepancies between his account and the officers' reports was that the reports were "false" or "made up."

Similarly, Plaintiff's self-serving testimony regarding what he claims he told Sgt. Biang are inadequate evidentiary support, as self-serving statements, without factual support in the record will not defeat a motion for summary judgment. *Hall*, 276 F.3d at 354; *Slowiak*, 987 F.2d at 1295. The only facts supporting Plaintiff's allegation that Sgt. Biang falsified his report are his own speculative, self-serving statements in his deposition, which are insufficient. *Hall*, 276 F.3d at 354; *Slowiak*, 987 F.2d at 1295. Accordingly, these portions of the statement should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 14:** **The next day, January 22, 1986, defendant Waukegan police officer Deprez interviewed Starks and asked him about the scratches and Starks told him that he had received them in the course of the attack on him on January 18, but Deprez falsely claimed in a report that Starks denied getting the scratches in the attack on him and said that he did not know how he had got them and "must've fell**

**somewhere," but did not know where he had fallen.** Exhibit 1, Starks 202-03; Exhibit 10, Deprez report 1/22/86. **Deprez also falsely claimed that Starks called Maria Gonzalez "bitch" on multiple occasions, and denied that the scarf found at the scene was his.** Exhibit 1, Starks, 64, 204, 329-30; Exhibit 10, Deprez report 1/22/86. (Doc. 350, ¶ 14).

As with Statement of Fact No. 7, the cited testimony fails, entirely, to establish that "Deprez falsely claimed in a report that Starks denied getting the scratches in the attack on him and said that he did not know how he had got them and 'must've fell somewhere,' but did not know where he had fallen." It further fails to establish that "Deprez also falsely claimed that Starks called Maria Gonzalez "bitch" on multiple occasions, and denied that the scarf found at the scene was his." The only citation that tends to suggest that Deprez falsely prepared a report is Plaintiff's own speculative testimony, explaining the discrepancies between his account and the Deprez's report was that Deprez "lied." However, self-serving statements, without factual support in the record will not defeat a motion for summary judgment. *Hall*, 276 F.3d at 354; *Slowiak*, 987 F.2d at 1295. The only facts supporting Plaintiff's allegation that Deprez lied in his report are his own speculative, self-serving statements in his deposition, which are insufficient. *Hall*, 276 F.3d at 354; *Slowiak*, 987 F.2d at 1295. For the same reasons, Plaintiff's statements about what he told Deprez should be stricken.

**Statement of Fact No. 15: Maria Gonzalez told the prosecutors in the case that she had not had sex with anyone other than her attacker for at least 72 hours prior to the attack,** Exhibit 9, Berrones, 140-142, **told Sergeant Juarez that she had not had sex for at least 2 weeks before the attack, and did not tell any other police officer that she had had consensual sex around the time of the rape.** Exhibit 11, Juarez Report, 3/31/86; Exhibit 5, Biang, 193-94. (Doc. 350, ¶ 15).

The Court should strike Plaintiff's statement "and [MG] did not tell any other police officer that she had had consensual sex around the time of the rape." This mischaracterizes the cited testimony of Sgt. Biang. Biang actually testified that there was no written police report showing MG told a police that she had consensual sex around the

time of the rape, and that if she did make such a statement, Sgt. Biang would expect that to appear in an officer's report. (*See* Plaintiff's Exhibit 5, Biang, 193-94). However, this testimony does not establish that she never made this statement to any officer. Therefore, it should be stricken is mischaracterization. *See Freight*, 2012 U.S. Dist. LEXIS 162330 at *8-9.

**Statement of Fact No. 17: Based on her findings, Thomas-Boyd should have reported and testified to her conclusion that because she found O secretor BGS on the vaginal swab and panties, which could not have originated from the victim who was a non-secretor, and had to be from the semen, Bennie Starks, an ABO Type B secretor, could not produce this result and thus was excluded as the source of the semen.** Exhibit 15, Harmor 190, 193-94. (Doc. 350, ¶ 17).

The Court should strike this statement as mischaracterization of the cited testimony of Gary Harmor, which only establishes that it is Mr. Harmor's *opinion* that, "Based on her findings, Thomas-Boyd should have reported and testified to her conclusion that because she found O secretor BGS on the vaginal swab and panties, which could not have originated from the victim who was a non-secretor, and had to be from the semen, Bennie Starks, an ABO Type B secretor, could not produce this result and thus was excluded as the source of the semen." Mr. Harmor's opinion does not establish a fact.

**Statement of Fact No. 19: DNA testing proved definitively that the semen on the vaginal swab taken from Maria Gonzalez and from her underpants after the rape was from the same person and that person was not Bennie Starks.** Exhibit 15, Harmor 119-21; Exhibit 14, Blake Affidavit June 1, 2004. (Doc. 350, ¶ 19).

The Court should strike the portion of the statement, "after the rape." The cited exhibits and testimony do not establish that MG was actually raped. *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 20: Defendant Biang contacted Defendant Schneider, who was his personal dentist at some point, to be a forensic dental consultants to evaluate a bite mark on the victim, Maria Gonzalez.** Exhibit 8, 30(b)(6), 228-29; Exhibit 5, Biang 83-84. (Doc. 350, ¶ 20).

The Court should strike the portion of the statement "who was his personal dentist at some point." First, there are no pages 228-29 included in Plaintiff's Exhibit 8. However, pages 228-29 of Sgt. Biang's March 27, 2014 deposition do not establish that Schneider was Biang's personal dentist. Second, similarly, pages 83-84 of Sgt. Biang's November 3, 2014 deposition, Plaintiff's Exhibit 5, do not provide any evidentiary support for the statement that Schneider was Biang's personal dentist. Accordingly, the same should be stricken. *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 21**: **Biang contacted Dr. Schneider and "I just explained that we had a victim who had been beaten and bitten by the apparent offender, and we asked him if he could come out and look at the -- you know, identify the bite marks and match them with the person that we had in custody."** Exhibit 5, Biang 90. **After a pause, interrupting the next question, Biang added, at his deposition, "Or tell us it wasn't his bite mark, for that matter."** Exhibit 5, Biang 91. **Biang gave Dr. Schneider information about the case before they went to the hospital.** Exhibit 4, Tr. T/S 607. (Doc. 350, ¶ 21).

The comment in this statement suggesting there was a pause between Sgt. Biang's statements at his deposition should be stricken as argumentative and unsupported. *See Freight*, 2012 U.S. Dist. LEXIS 162330 at *8-9. In that regard, the transcript of the deposition could also suggest Plaintiff's counsel interrupted Sgt. Biang before he could complete his answer:

> Q. When you say that you explained what happened, what -- what did you explain?
> A. I just explained that we had a victim I just explained that we had a victim who had been beaten and bitten by the apparent offender, and we asked him if he could come out and look at the -- you know, identify the bite marks and match them with the person that we had in custody.
> Q. And so --
> A. Or tell us it wasn't his bite mark, for that matter."

(Plaintiff's Exhibit 5, Biang 90–91). Further, the statement "Biang gave Dr. Schneider information about the case before they went to the hospital" should be stricken on the grounds it is overly-vague with regard to the term "information." Further, the cited trial testimony does not, in any way, establish that "Biang gave Dr. Schneider information about

the case before they went to the hospital." The cited trial testimony does not even reference Sgt. Biang, nor reference Dr. Schneider's knowledge of this particular case at any time. Accordingly, it should be stricken and ignored. *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 23:** **Officer Anderson went to Victory Hospital with Drs. Schneider and Hagstrom, who at some point were long time business partners in Northern Illinois Forensics, and took photographs of the bite mark on Gonzalez, and determined himself how to take the photographs, with no instructions from Drs. Schneider and Hagstrom.** Exhibit 18, Anderson, 37, 40. **Although Drs. Schneider and Hagstrom subsequently claimed that these photographs were the ones they used to compare the bite mark to Bennie Starks dentition, this is not correct.** Exhibit 18, Anderson, 56, 94-95, 107. **The date on the police report documenting this photography session has been altered, with a prior date on the report, that looks like 1/28/86, being changed to now appear to date the session as January 22.** Exhibit 18, Anderson, 34-35; Exhibit 17, Schneider, 99- 100, 135-37. (Doc. 350, ¶ 23).

The Court should strike this statement for several reasons. First, the cited testimony of Anderson provides no evidentiary support for the statement Drs. Schneider and Hagstrom "at some point were long time business partners in Northern Illinois Forensics." In fact, the phrase "Northern Illinois Forensics" does not appear anywhere in Anderson's deposition. (Anderson's full deposition transcript is attached as Ex. 11 to Dr. Schneider's Statement of Material Facts in Support of Motion for Summary Judgment, Doc. 310-18).

Second, the statement that Anderson "determined himself how to take the photographs, with no instructions from Drs. Schneider and Hagstrom" is an unfair mischaracterization of Anderson's cited testimony. Anderson testified during his deposition "I don't recall" when asked "Did [Drs. Schneider and Hagstrom] themselves give you any instructions as to how to take the photographs?" (Plaintiff's Exhibit 18 at 40). Further, this statement is contradicted by the deposition testimony of Dr. Schneider, who stated:

> Q. When you were taking the -- participating in taking the photos of Maria Gonzalez, you held the ruler; is that correct?
> A. Yes, I held the ruler.
> Q. And you determined the position of where the ruler was going to be held; is –
> A. Yes, I did.

> Q. -- that correct? And you directed the officer in what photographs you
> wanted taken; isn't that correct?
> A. Basically.
> Q. All right. You were in charge of collecting the forensic evidence in this
> case for the bite mark identification?
> A. Well, I was kind of co-in charge with the evidence technician taking the --
> the –
> Q. The photographs?
> A. The photographs. Yeah. We worked together to get the photos we needed
> with and without rulers.

(*See* Schneider Dep., Ex. 8 to Dr. Schneider's Statement of Material Facts in Support of

Motion for Summary Judgment, Doc. 310-9, at p. 296). Since this statement is not supported

by Anderson's cited testimony, and is clearly contradicted by other evidence on the record, it

should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

Next, the statement "Although Drs. Schneider and Hagstrom subsequently claimed

that these photographs were the ones they used to compare the bite mark to Bennie Starks

dentition, this is not correct" should be stricken as unsupported by the citations to the record.

Specifically, in the cited testimony of Anderson, he states that he did not take six

photographs shown to him during his deposition. Nowhere does the cited testimony establish

that "Drs. Schneider and Hagstrom subsequently claimed that these photographs were the

ones they used to compare the bite mark to Bennie Starks dentition," and accordingly this

portion of the statement should be stricken pursuant to Local Rule 56.1(b). *See Cady*,

467 F.3d at 1060.

Finally, the statement "The date on the police report documenting this photography

session has been altered, with a prior date on the report, that looks like 1/28/86, being

changed to now appear to date the session as January 22" should be stricken as the cited

evidence does not support this statement. In the cited testimony of Anderson, he testifies

unequivocally that the date of the record, which he made, was January 22, 1986. He states

that 'It looks like I overrode (sic) the second '2' on there. It appears to be a '2,' but I see

where you could say it would be the 28th, also." (Plaintiff's Exhibit 18, Anderson, 34-35). Anderson explained the circumstances under which he overrode the original as being "sloppy." (Plaintiff's Exhibit 18, Anderson, 34). In other words, his testimony establishes this was a handwriting mistake on Anderson's record that Anderson, himself, immediately corrected; it hardly establishes the record was "altered."

Dr. Schneider's cited testimony provides no evidence the record has been "altered." Dr. Schneider, who is not qualified as a handwriting expert, was given the record during his deposition and stated that he had never seen it before. (Plaintiff's Exhibit 17, Schneider, 99). He testified that he was having difficulty reading the record, and despite Plaintiff's counsel effort to testify on his behalf that the record appeared "altered," ultimately concluded, "It looks like '1/22.' It looks like it was changed to 1/22.' I don't know what it is." (Plaintiff's Exhibit 17, Schneider, 100). A fair reading of this portion of Dr. Schneider's testimony hardly establishes the record was "altered." Accordingly, this portion of Plaintiff's Statement of Fact No. 23 should be stricken.

**Statement of Fact No. 24: Biang had "lots of conversations" with Drs. Schneider and Hagstrom during the criminal prosecution of Starks but he did not prepare any reports about those conversations.** Exhibit 5, Biang, 156-57. **Biang talked to Dr. Schneider and Dr. Hagstrom concerning their opinions with respect to who made the bite marks, with the dentists telling Biang that Starks, beyond any question, made those bite marks.** Exhibit 5, Biang, 101, 121-22. **In the course of his work on the case, Dr. Hagstrom became aware of evidence tending to inculpate Starks, including that he lived across the street from the location of the attack, that police found scratches on Starks' back when he was examined by the police after the attack, and he was provided with and viewed a picture of scratches on Starks' back that had been taken by the police.** Exhibit 21, Dr. Hagstrom Deposition,158, 161, 176. (Doc. 350, ¶ 24).

The statement "Biang talked to Dr. Schneider and Dr. Hagstrom concerning their opinions with respect to who made the bite marks, with the dentists telling Biang that Starks, beyond any question, made those bite marks" should be stricken. The cited testimony only establishes that Sgt. Biang testified that he "talked to Dr. Schneider and Dr. Hagstrom

concerning their opinions with respect to who made the bite marks, with the dentists telling Biang that Starks, beyond any question, made those bite marks," not that Dr. Schneider and Dr. Hagstrom actually *used* this terminology in their conversations with Sgt. Biang.

Further, the cited testimony of Dr. Hagstrom supporting the statement that "became aware of evidence tending to inculpate Starks . . ." is a complete mischaracterization. Dr. Hagstrom testified that he became aware of the evidence "after we went to the court house and saw that other evidence that was gathered," in other words, during the trial at the court house. This statement is impermissibly ambiguous with respect to the time at which Dr. Hagstrom learned this information, and wrongly implies that it was during his analysis and prior to forming his opinions.

Dr. Hagstrom's *full* deposition transcript, in which the context of this testimony can be fairly understood, is attached as Ex. 9 to Dr. Hagstrom's Statement of Facts in Support of Motion for Summary Judgment. (Doc. 313-11.) His testimony, at pages 151-62, demonstrates that, in fact, he had almost no knowledge of the evidence against Starks.

In that regard, Dr. Hagstrom testified that he "thought he saw a picture somewhere that showed some scratches," but that he did not "recall where I saw the picture, and it might not be a picture of him [Starks]." There is no support in the testimony establishing when the picture was taken, by whom, or when Dr. Hagstrom viewed it, if at all. Accordingly, this portion of Plaintiff's Statement of Fact No. 24 should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 25: Defendants Drs. Schneider and Hagstrom reported to the prosecutor that their examination of the dental evidence established beyond any doubt that Starks was the person who bit Gonzalez, and this level of certainty was very important to the prosecutor and was extremely compelling evidence of Starks' guilt of all the crimes he was accused of, and never advised the prosecutor that expressing this level of certainty was inconsistent with national odontological standards.** Exhibit 9, Berrones 206-08; Exhibit 22, Hagstrom and Schneider Report,

May 13, 1986; Exhibit 23, Hagstrom and Schneider Report, July 1, 1986; Exhibit 24, Senn and Pretty Report, May 10, 2010. (Doc. 350, ¶ 25).

The statement that "Drs. Schneider and Hagstrom reported to the prosecutor that their examination of the dental evidence established *beyond any doubt* that Starks was the person who bit Gonzalez" should be stricken as unsupported. None of the cited exhibits contain the phrase "beyond any doubt," or support the allegation that this level of certainty was expressed by Drs. Schneider and/or Hagstrom. Specifically, Berrones never testified that Drs. Schneider and Hagstrom reported their opinions to him "beyond any doubt." (Plaintiff's Exhibit 9, Berrones 206-08). In their May 13, 1986 report, Drs. Schneider and Hagstrom stated they had "found a definite match." In their July 1, 1986 report, Drs. Schneider and Hagstrom concluded: "The comparison of the models to the bite photo and the over-lays to the bite photo indicated a very specific and unusual pattern leading us to the conclusion that the bite on Maria Gonzalez was inflicted by Bennie Starks." Finally, the May 10, 2010 report of Senn and Pretty does not state, anywhere, that Drs. Schneider and Hagstrom expressed their opinion to prosecutors to the "beyond any doubt" level of certainty. This statement is clearly not supported by the materials cited by Plaintiff, and should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

Moreover, given that the cited exhibits fail to establish Drs. Schneider and Hagstrom expressed this level of certainty to prosecutors, Plaintiff's statements that "this level of certainty was very important to the prosecutor and was extremely compelling evidence of Starks' guilt of all the crimes he was accused of," and that Drs. Schneider and Hagstrom "never advised the prosecutor that expressing this level of certainty was

inconsistent with national odontological" are similarly DENIED and should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 26: Neither Dr. Hagstrom nor Dr. Schneider kept any records of when they did the work that they did on the Bennie Starks case even though this was a necessary part of the process, did not write down any description of the wound when they saw it, did not measure the wound, and did not measure the dimensions of the bite mark as shown in the photographs they used in stating that Starks made the bite mark.** Exhibit 21, Hagstrom, 25-26, 73; Exhibit 17, Schneider, 37, 142- 43, 178-82.  (Doc. 350, ¶ 26).

The statement, "even though this was a necessary part of the process" is not supported by the cited deposition testimony, and should be stricken.

**Statement of Fact No. 27: Drs. Hagstrom and Schneider, working together, oriented the bite mark on Maria Gonzalez in accordance with her description of how she was bitten and because that was the way it fit, and not in accordance with the appearance of the bite mark.** Exhibit 21, Hagstrom 37-38, 95; Exhibit 17, Schneider 152-54, 174-75.  **This orientation was 180 degrees wrong, and actually compared the mandibular portion of the bite mark with the models of Starks' maxillary dentition. In all persons, the maxillary (upper) jaw is wider than the mandibular (lower) jaw. In addition, the photograph of the bite mark has the ruler used to establish scale out of focus, so the actual size of the bite mark cannot be established.** Exhibit 4, Tr. T/S 630-33; Exhibit 24, Senn and Pretty Report, May 10, 2010; Exhibit 25, Hagstrom and Schneider Faulty Orientation of Bite Mark; Exhibit 26, Dr. Senn Deposition, 39-40, 99-100; Exhibit 27, Dr. Senn Report 11/25/14.

The Court should strike the statement that Drs. Schneider and Hagstrom oriented the bite mark "not in accordance with the appearance of the bite mark," which mischaracterizes the cited testimony.  Dr. Schneider testified that, "We determined that -- at the hospital how that was oriented. When I looked at it, based on interviewing Mrs. Gonzalez, *based on looking at the bite mark, looking at the characteristics that were in it*, I could orient the -- the jaws."  (Plaintiff's Exhibit 17, p. 153) (emphasis added).  Dr. Schneider also testified "I oriented the bite mark using my work product, and that's how I came to my conclusion with a reasonable degree of medical certainty how the bite mark was oriented."  Clearly, this testimony establishes that the appearance of the bite mark

was one of several factors that informed Dr. Schneider's and Dr. Hagstrom's orientation of the bite mark.

Further, when asked "Other than what Ms. Gonzalez told you, was there something about what you saw in that bite mark that allowed you to make that orientation?" Dr. Schneider answered, "I don't recall." (Plaintiff's Exhibit 17, p. 125). However, Dr. Schneider also testified that there were several aspects of his analysis, performed in 1986, that he did not recall, as a full reading of his deposition demonstrates. Dr. Schneider's inability to recall other facts does not establish that they did not exist. Since the cited testimony does not support this statement, and should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

The court should also strike the statement "This orientation was 180 degrees wrong, and actually compared the mandibular portion of the bite mark with the models of Starks' maxillary dentition." The cited exhibits establish only that it is the opinion of Plaintiff's retained experts that Dr. Schneider's and Dr. Hagstrom's orientation was incorrect. This opinion is not a material fact.

The court should strike the statement that "In all persons, the maxillary (upper) jaw is wider than the mandibular (lower) jaw." Absolutely none of the cited materials make any reference to the relative width of maxillary and mandibular jaws in all persons. There is no academic research or medical/dental authority cited to support this claim. Plaintiff's expert, Dr. Senn, does not offer this opinion or make this statement in any of his reports or testimony. Accordingly this portion of the statement should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

Finally, the court should strike the statement that "In addition, the photograph of the bite mark has the ruler used to establish scale out of focus, so the actual size of the bite mark cannot be established." Again, the cited materials only establish that it is Plaintiff's expert's opinion that, since the ruler used to establish scale in the photograph is out of focus, the actual size of the bite mark cannot be established. This opinion is not a material fact, and should be stricken.

**Statement of Fact No. 28**:  **Drs. Hagstrom and Schneider determined that Stark's mandibular dentition did not make the mandibular portion of the bite mark on MG, but they did not report this to the prosecutor.** Exhibit 21, Hagstrom 97; Exhibit 17, Schneider 173. (Doc. 350, ¶ 28).

This statement should be strcken as it improperly assumes the correct mandibular portion of the bite mark on MG is established as fact by Dr. Senn's opinion and mischaracterizes the testimony of Drs. Schneider and Hagstrom. What they actually stated in this cited testimony is that the maxillary overlay fit what they considered to be the maxillary portion of the bite mark, whereas it did not fit the mandibular portion:

> Q. But in terms of the marks that you wanted to use, how did you determine that those marks were made by the maxillary rather than the mandibular?
> A. Because when you lay the overlay on there, the maxillary overlay lined up with it when the mandibular didn't.
> Q. Did you at any time report to anyone that if, in fact, the bite marks that you identified as maxillary were, in fact, mandibular, Mr. Starks was excluded as making the bite mark on Maria Gonzalez?
> A. Did we ever say that?
> Q. Yeah.
> A. No, I don't believe we ever said that.

(Hagstrom Dep., Ex. 9 to Dr. Hagstrom's Statement of Facts in Support of Motion for Summary Judgment., Doc. 313-11, pp. 96–97).

> Q. Did you ever compare the model with the marks that we've identified to the right of the central red spot being the mandibular teeth?
> A. Yes, we did.
> Q. Okay. And they didn't match?

A. No, they didn't.

Q. So if, in fact, those marks were made by the mandibular teeth of the biter, then Bennie Starks wasn't the biter?

A. In 1986, I analyzed this bite mark to the best of my ability, and I took Bennie Starks' teeth, a model of his teeth, and put them over the bite mark and saw specific unusual characteristics in this bite mark. I made my opinion with a reasonable degree of medical certainty that certain teeth made those characteristics in the bite mark.

Q. But you would agree with me that if, in fact, you oriented it incorrectly, and that those marks that we've identified on 7B -- 7A, I'm sorry -- were the mandibular teeth, Bennie Starks did not make this bite mark?

A. I can't say that.

(Schneider Dep., Ex. 8 to Dr. Schneider's Statement of Material Facts in Support of Motion for Summary Judgment, Doc. 310-9, at p. 173). Accordingly, this statement should be stricken as a mischaracterization of the cited testimony. *See Freight*, 2012 U.S. Dist. LEXIS 162330 at *8-9.

**<u>Statement of Fact No. 33</u>: Drs. Hagstrom and Schneider produced to the prosecutor, and used at trial a chart assigning points to the number of similarities between the bite mark and Starks dentition, and claimed that the chart showed 62 points of similarity, but did not disclose to the prosecutor, defense counsel or the jury that this chart was experimental, and at their depositions were unable to explain how they arrived at the results noted on the chart.** Exhibit 21, Hagstrom 106; Exhibit 17, Schneider 170, 184-85, 268, 279. (Doc. 350, ¶ 33).

The Court should strike the portion of the statement "used at trial." The cited testimony does not establish the chart was used at trial in any capacity. Further, Plaintiff cites to no actual trial testimony where the chart is referenced or discussed.

Next, the cited testimony does not establish that the chart was experimental; only that Drs. Schneider and Hagstrom never told prosecutors it was experimental. Indeed, the evidence establishes that the chart was *not* experimental. As Dr. Senn testified, "I think at the time they used it [the chart] it was still in good graces." (See full transcript of Dr. Senn, Ex. 13 to Dr. Schneider's Statement of Material Facts in Support of Summary Judgment, Doc. 310-22, p. 276–77). Thus, Plaintiff's statement that "this chart was experimental" should be stricken.

**Statement of Fact No. 34:** **On May 13 1986 Hagstrom and Schneider sent to the prosecutor a report in which they stated that: We have completed examination of photos taken of the bites inflicted on Maria Gonzalez. We have examined and compiled analytical work ups from the models of Benny Starks Jr.'s teeth. We have done a detailed comparison of the bite marks with the models and have found a definite match. It is our conclusion that the bites on Maria Gonzalez were made by Benny Starks Jr.** Exhibit 22, Hagstrom and Schneider Report, May 13, 1986; Exhibit 17, Schneider, 197-98; Exhibit 21, Hagstrom, 107. **Expressing this level of certainty was inconsistent with accepted odontological standards in 1986, but neither of the Defendant dentists told the prosecutor this.** Exhibit 24, Senn and Pretty Report, May 10, 2010; Exhibit 9, Berrones, 209. **In fact, both Hagstrom and Schneider had not concluded that Starks definitely made the marks, and held the opinion that another person could have left those marks, and had concluded only that Starks could have made the bite, but they did not tell the prosecutor or testify at trial to this, because the prosecutor and defense counsel did not ask.** Exhibit 21, Hagstrom 107-12; Exhibit 17, Schneider, 316-17. (Doc. 350, ¶ 34).

The Court should strike the statement "Expressing this level of certainty was inconsistent with accepted odontological standards in 1986." The cited report of Dr. Senn establishes only that it is Dr. Senn's *opinion* that this level of certainty was inconsistent with accepted standards; not that this is actually the case. Accordingly it should be stricken pursuant to Local Rule 56.1(b). *See Cady*, 467 F.3d at 1060.

The Court should further strike the statement "In fact, both Hagstrom and Schneider had not concluded that Starks definitely made the marks" and "had concluded only that Starks could have made the bite." First, neither Dr. Hagstrom nor Dr. Schneider ever testified or reported the phrase "definitely made the marks" or testified that "only Starks could have made the bites"—instead, they reported, in the May 13, 1986 report, that "We have done a detailed comparison of the bite marks with the models and have found a *definite match*." (Plaintiff's Exhibit 22).

Second, this statement assumes that the opinion of a "definite match" is mutually exclusive to the possibility that another person could have left the marks, which mischaracterizes the cited testimony of Drs. Schneider and Hagstrom and is not supported by any evidence on record. Dr. Hagstrom, in fact, testified:

Q.  So that was certainly what -- that was your understanding of when you said "definite match," that you didn't mean that no other person could not have left those marks --
A.  Yes.

(Plaintiff's Exhibit 21, Hagstrom, 109).  For his part, Dr. Schneider testified:

Q.  If you were asked hypothetically at trial in 1986 if someone else could have left that bite mark, what would your answer have been?
A.  Yes, someone could have -- someone else could have made the bite mark. I didn't identify Mr. Starks to the exclusion of all others.

(Plaintiff's Exhibit 17, Schneider, 316).  Clearly, this testimony is not supported, and is in fact contradicted by Plaintiff's statement that Drs. Schneider and Hagstrom "had concluded only that Starks could have made the bite" and should be stricken pursuant to Local Rule 56.1(b).  *See Cady*, 467 F.3d at 1060.

**Statement of Fact No. 37:** **Drs. Schneider and Hagstrom failed to advise the prosecutor that they had misrepresented the facts and evidence in the Bennie Starks case.** Exhibit 9, Berrones, 48.  (Doc. 350, ¶ 37).

This absurd statement has absolutely no evidentiary basis in any of the evidence on record, let alone page 48 of Luis Berrones' deposition, and should be stricken and igrnored by the Court.  First, this statement is a blatant misrepresentation of the testimony.  The *full* testimony of Luis Berrones reads:

Q.  Have you become aware of any evidence to date that would indicate to you that my clients, Dr. Hagstrom or Schneider, misrepresented any facts or evidence?
**A. No.**
Q. Do you have an opinion to a reasonable degree of legal certainty as to whether or not they offered truthful testimony based on the medical science in 1986?
MR. STAINTHORP: Objection to form.
BY THE WITNESS: **A. In 1986, as I said before, I had no reason to believe they were not being truthful in their testimony.**
Q. To your knowledge did my clients withhold any information to any person with respect to the role in the Bennie Starks case?
MR. STAINTHORP: Objection to form.
BY THE WITNESS: **A. Not that I'm aware of.**

22

Q. I think you indicated earlier my clients, Dr. Hagstrom and Schneider acted alone with respect to their evaluation and opinions?
**A. Yes.**

(Exhibit 12 to Dr. Schneider's Statement of Material Facts in Support of Motion for Summary Judgment, Doc. 310-20, at p. 48–49) (emphasis added). There is no question Plaintiff's Statement of Fact No. 37 is completely contradicted by the cited testimony.

Further, the statement is completely ambiguous with respect to what "facts and evidence" Drs. Schneider and Hagstrom supposedly misrepresented, and fails to state to whom they allegedly misrepresented such facts. The statement presents a legal conclusion—misrepresentation—as fact, which does not "aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz*, 634 F.3d at 899. Accordingly, this statement should be stricken by the Court and not considered as an issue of material fact in deciding the parties' Motions for Summary Judgment, pursuant to Local Rule 56.1(b) and *Cady*, 467 F.3d at 1060.

**Statement of Fact No. 40**: **The sexual assault charges against Starks were nolle prossed on May 15, 2012, and the aggravated battery charges was nolle prossed on January 7, 2013.** Exhibits 33 and 34. **On September 25, 2013, Plaintiff was granted a Certificate of Innocence, establishing that he was factually innocent of all charges brought against him.** Exhibit 35. (Doc. 350, ¶ 40).

This Court should strike the statement, "establishing that he was factually innocent of all charges brought against him" for several reasons. First, pursuant to the Illinois statute under which Bennie Starks was granted a Certificate of Innocence ("COI"), 735 ICLS 5/2-702, Plaintiff was required (among other things) to prove that, by a preponderance of the evidence, he was innocent of the crimes for which he was convicted. *See* 735 ILCS 5/2-

702(g)(3).  Thus, taken at face value, Plaintiff's COI only establishes that a judge found it is more likely than not he is innocent—not that he is innocent as a factual matter.

Plaintiff's claim that he is "factually innocent" based on the COI is further called into question by the fact that the Lake County State's Attorney chose not to challenge Plaintiff's Petition for a COI in 2013, and there, the myriad factual and logical inconsistencies contained therein.  For these reasons, as the Court is aware, Plaintiff's COI is the subject of a petition by Defendants to vacate the COI pursuant to 735 ILCS 5/2-1401, which is currently pending in the Circuit Court of the Nineteenth Judicial District, Lake County, Illinois, arguing that Starks did not prove his innocence by a preponderance of the evidence, and that the COI should never have been granted.  The Defendants, in that matter, have been granted standing by the Court to pursue this 2-1401 Petition, which has survived Starks' Motion to Dismiss. (See March 20, 2015 Orders and Opinion, attached hereto as Ex. A).  Since Starks' COI may very well be vacated in these proceedings on the basis that he did *not* prove his innocence by a preponderance of the evidence, the same COI clearly does not provide the evidentiary basis for his claim that he is "factually innocent."

Nor can Starks point to the State's Attorney's decision to *nolle pross* his convictions as evidence of "actual innocence."  As Lake County State's Attorney Michael Nerheim's press release (attached as Ex. 20 to Dr. Schneider's Statement of Facts in Support of Motion for Summary Judgment, Doc. 310-34) makes clear, the decision to *nolle pross* Starks' aggravated battery conviction "does not reflect any opinion as to whether I believe Mr. Starks is guilty or not guilty."

Lastly, as argued with respect to Plaintiff's Statement of Fact No. 1, the claim of "factual innocence" is legal conclusion does not "aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to

spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz*, 634 F.3d at 899. Clearly, the COI does not provide an adequate evidentiary basis for a claim of "factual innocence." Accordingly, this statement should be stricken by the Court as a violation of Local Rule 56.1, *see Cady*, 467 F.3d at 1060, and not considered as an issue of material fact in deciding the parties' Motions for Summary Judgment.

WHEREFORE, the defendants Dr. Schneider and Dr. Hagstrom, by counsel, respectfully request this Honorable Court STRIKE Certain of Plaintiff's Statements of Additional Facts Pursuant to L.R. 56.1(b)(3)(C), and for all other just and proper relief in the premises.

Respectfully Submitted,
BOLLINGER CONNOLLY KRAUSE LLC

 /s/  **Michael D. Krause**
One of the Attorneys for the Defendants, Dr. Carl Hagstrom and Dr. Russell Schneider

Michael D. Krause, ARDC #6207328
Robert Tengesdal, ARDC # 6288650
Andrew S. Chestnut, ARDC # 6312527
BOLLINGER CONNOLLY KRAUSE, LLC
500 West Madison, Suite 2430
Chicago, Illinois 60661
Tel:    (312) 253-6200
Fax:    (312) 253-6201

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2015, I electronically filed this Motion with the Clerk of the Court using the CM/ECF electronic system, and all counsel of record were served by CM/ECF – USDC.

**/s/    Andrew S. Chestnut**