IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BENNIE STARKS ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 09 CV 348 |
| v. ) | Hon. Judge Feinerman |
| ) | |
| CITY OF WAUKEGAN, et al. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT RUSSELL SCHNEIDER AND CARL HAGSTROM'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS PURSUANT TO L.R. 56.1(b)(3)(C)**
_____

NOW COMES Defendants, DR. RUSSELL SCHNEIDER and DR. CARL HAGSTROM, by and through his attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, and in support of their Response to Plaintiff's Statement of Additional Facts Pursuant to L.R. 56.1(b)(3)(C) (Doc. 350), state as follows:

1. Plaintiff Bennie Starks is completely innocent of any and all crimes committed against Maria Gonzalez, including aggravated criminal sexual assault, attempt aggravated sexual assault, aggravated battery and unlawful restraint. Bennie Starks Deposition, Exhibit 1, at 74, 76-77, 114-15, 212-13, 278-79.

**Response: DENIED for reasons set forth in Drs. Schneider and Hagstrom's Motion to Strike Plaintiff's Statement of Additional Facts, Doc. 366 (hereinafter refered to as the "Motion to Strike").**

2. On January 18, 1986, at approximately 10:30 - 11:00 p.m., as he was walking from a bar to his mother's house at 300 Lake Street Waukegan, Bennie Starks, who was not intoxicated, was attacked by two men in the vicinity of Water and County Streets in the City of Waukegan, and was robbed of his black coat (which contained his gloves and scarf), watch, $80 and a red bag containing a sweater that he had purchased that afternoon, and in the course of the attack he sustained scratches to various parts of his body. Exhibit 1, Starks, 31-32, 97-99, 112, 119-24, 128. "At the time of the attack, Bennie Starks was 26 years old, 5-9 in height, and had short curly hair, a light beard and an established mustache." Exhibit 2, Arrest Card 1/21/86; Exhibit 3, photographs of Bennie Starks taken at time of arrest.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

1

3. On the night of January 18, 1996 Maria Gonzalez, who was 69 years old and lived at 200 Lake Street in Waukegan, left her home wearing only her nightgown, underpants and slippers and was attacked in the vicinity of Lake and Utica Streets in Waukegan, by a single black male who was 18-19 years of age with no facial hair who was carrying the red bag that had been stolen from Starks and had Bennie Starks' black coat draped over his left arm and Starks' watch on his wrist. Exhibit 4, Tr. T/S 345, 430-31, 442, 443, 445, 713-14. The man hit Gonzalez repeatedly in her face and forcibly raped her, placing his penis in her vagina three to four times, placing his penis on her face, attempting to force her to put his penis in her mouth and biting her on her left shoulder. Exhibit 4, Tr. T/S 440-41, 434-45, 447. Gonzalez ripped off the watch from the attacker, who left the coat, containing the scarf and gloves, in the ravine. Exhibit 4, Tr. T/S 354, 448.

**Response: Admit that "On the night of January 18, 1996 Maria Gonzalez, who was 69 years old and lived at 200 Lake Street in Waukegan, left her home wearing only her nightgown, underpants and slippers and was attacked in the vicinity of Lake and Utica Streets in Waukegan, by a single black male." Admit that individual who attacked MG was carrying a red bag. Admit statement insofar as it states that individual who attacked MG "had Bennie Starks' black coat draped over his left arm and Starks' watch on his wrist," but DENIED insofar as this statement implies this individual was anyone other than Bennie Starks. Admit statements that "The man hit Gonzalez repeatedly in her face" and was "biting on her left shoulder." Admit that Gonzalez ripped the watch off the attacker, who left the coat, containing the scarf and gloves in the ravine.**

**The rest of the statement is DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

4. At the scene, Gonzalez stated to emergency personnel that she had been not raped during the attack, explaining at trial that she did not initially report this because "my head wasn't right. I was hit . . . I don't know [if I told a Waukegan Police Officer that I had not been raped] I don't know what happened. I wasn't well." Exhibit 4, Tr. T/S 453-54.

**Response: Admitted.**

5. At 2 a.m. on January 19, 1986, Maria Gonzalez was admitted to Victory hospital where it was noted that she needed a translator and she was observed to be "very traumatized and very upset," "her face, her eyes were swollen. She had quite a few abrasions on her body, arms, legs, back. She was very dirty. And her clothing was very dirty. But she was badly beaten about the head, and the face, neck area." Exhibit 4, Tr. T/S 406, 410. At 5 a.m., in response to a Spanish-speaking hospital worker, Maria Gonzalez stated that she had been raped and a Vitullo sexual assault kit was collected and turned over to the police. Exhibit 4, Tr. T/S 401-06.

2

**Response: DENIED as to statement that "At 5 a.m., in response to a Spanish-speaking hospital worker, Maria Gonzalez stated that she had been raped" for the reasons set forth in the Motion to Strike, Doc. 366. The rest of the statement is admitted.**

6. Victim's statements often vary at different times and in this case "We had a statement initially, we had another statement. It happens all the time in criminal cases. Witnesses change their statement or victims change their statement as their memory gets better, or as things happen, things come back to them." Exhibit 5, Biang Deposition, 189.

**Response: Admitted.**

7. On January 21, 1986, Starks voluntarily went to the Waukegan Police Department, signed a Miranda waiver and spoke to Defendant Biang and informed him that he had been attacked on his way home on the night of September 18, 1996, that his coat (containing his scarf and gloves) had been stolen, along with his watch, $80 and the red bag, and that he had not attacked Maria Gonzalez, but Biang prepared and filed a police report in which he falsely claimed that Starks was inconsistent in his accounts of the attack on him, had at one point denied that the red bag had been stolen from him in the robbery and stated instead that he had taken it to his mother's house earlier that evening, claimed that the scarf and gloves found at the scene of the attack on Maria Gonzalez were not his, and in which he did not note that Starks denied that he had attacked Gonzalez "because it did not seem germane to the facts at the time." Exhibit 5, Biang, 15-23, 49; Exhibit 1, Starks 181-189; Exhibit 6, Biang Report 1/21/86.

**Response: Admit that "On January 21, 1986, Starks voluntarily went to the Waukegan Police Department, signed a Miranda waiver and spoke to Defendant Biang" and that Sgt. Biang testified he "did not note that Starks denied that he had attacked Gonzalez "because it did not seem germane to the facts at the time." The rest of the statement is DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

8. Biang immediately refused to believe Starks account of the robbery, stating "we knew it was a lie because he – he had gotten identified and he left his coat at the scene and he was identified as the offender, and he admitted it was his coat. I have – we were – I was 99 percent sure that was a lie . . we knew it was just a bunch of baloney," Exhibit 5, Biang, 52, and Biang and the Waukegan Police Department pursued the investigation based on the understanding that Starks' account of the robbery was "a false statement . . . we didn't think there was a robbery that took place . . . Starks could give us absolutely no information about anything that happened in this robbery, no description that was worth a darn. . . . It was nonsense." Exhibit 5, Biang, 56- 57, 62-63. At the time that Starks was telling Biang about being robbed Biang was very definite that the account of the robbery was a fabrication and that the presence of his clothing at the scene was "highly incriminating," and that it was highly likely that Starks had attacked Gonzalez. Exhibit 5, Biang, 62.

3

**Response: Admitted.**

9. Biang took no steps to investigate the robbery of Starks, and there are no police reports that indicate that any other officers did either, Exhibit 5, Biang, 58, even though the Waukegan Police Department would "document anything we did to try to debunk his alibi," Exhibit 5, Biang, 59, but in this case they did not need to "because we had his bite marks, we had his identification, we had his coat at the scene, we had an admission that it was his coat. We didn't need to debunk anything. It was a solid case. It wasn't based on a confession. We didn't have to get a confession; it wasn't critical. We got an admission that he was – you know, that he admitted it was his coat and he admitted he was, you know, in the vicinity at the time." Exhibit 5, Biang, 59-60.

**Response: Admitted.**

10. Immediately after this interview with Bennie Starks, at a time when Defendant Biang was convinced that Starks was the attacker of Maria Gonzalez, Biang obtained a photograph of Starks from the mug shot book, but at his deposition was unable to say which of the several photographs of Starks in the mug shot book he took, though he has now, after the production of Clark's expert report criticizing the failure of the Waukegagn [sic] Police Department to keep an accurate record of what photographs were shown, sworn in an affidavit that he knows precisely what photograph he took - a Polaroid of Starks taken on January 21, 1986 that was not in the mug shot book, a photograph that at his deposition he denied he used. Exhibit 5, Biang 65-71, 180; Biang Affidavit, Dkt.320-21; Exhibit 7, Clark Report.

**Response: Admitted.**

11. Biang and Defendant Juarez, who Biang had told about his interview with Starks, took the photograph of Starks and four other photographs to the hospital where Maria Gonzalez was hospitalized and she identified Starks as the person who attacked her. The photo line-up was not preserved in the police file and was not introduced into evidence at the trial of Starks. Exhibit 5, Biang, 71-73. At some point after the photographs were used in the identification procedure with Gonzalez all of the photographs in the "mug shot" book were destroyed, as well as all information identifying the persons whose photographs were shown. Exhibit 7, Clark Report p. 9; Exhibit 8, Waukegan 30(b)(6) Dep., 92, 94-95.

**Response: Admitted, with the caveat that Sgt. Biang testified that he guessed or believed the mug shot books were thrown away. The testimony does establish that the mug books were, in fact, "destroyed."**

12. The prosecutor would have probably introduced the photographic identification array into evidence, if it had been available, since an in-court identification is not really a test of a person's ability to identify the perpetrator. Exhibit 9, Berrones Deposition, 221-22.

**Response**: Admitted.

13. After Starks was arrested, Biang observed scratch marks on Starks, and immediately assumed that they had been inflicted when Maria Gonzalez scratched him because "we assumed scratching would be part of that struggle" with her attacker, though she never in fact said that she had scratched him. Exhibit 5, Biang, 162.

**Response: Admitted, with the caveat that the statement "though [MG] never in fact said that she had scratched him" mischaracterizes the cited testimony of Sgt. Biang. Sgt. Biang testified that MG told him, "She said she fought with him. She said she struggled with him, and that's when he started to beat her." (Plaintiff's Exhibit 5, Biang, 162).**

14. The next day, January 22, 1986, defendant Waukegan police officer Deprez interviewed Starks and asked him about the scratches and Starks told him that he had received them in the course of the attack on him on January 18, but Deprez falsely claimed in a report that Starks denied getting the scratches in the attack on him and said that he did not know how he had got them and "must've fell somewhere," but did not know where he had fallen. Exhibit 1, Starks 202-03; Exhibit 10, Deprez report 1/22/86. Deprez also falsely claimed that Starks called Maria Gonzalez "bitch" on multiple occasions, and denied that the scarf found at the scene was his. Exhibit 1, Starks, 64, 204, 329-30; Exhibit 10, Deprez report 1/22/86.

**Response: Admit that "The next day, January 22, 1986, defendant Waukegan police officer Deprez interviewed Starks and asked him about the scratches and Starks told him that he had received them in the course of the attack on him on January 18." The rest of the statement is DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

15. Maria Gonzalez told the prosecutors in the case that she had not had sex with anyone other than her attacker for at least 72 hours prior to the attack, Exhibit 9, Berrones, 140-142, told Sergeant Juarez that she had not had sex for at least 2 weeks before the attack, and did not tell any other police officer that she had had consensual sex around the time of the rape. Exhibit 11, Juarez Report, 3/31/86; Exhibit 5, Biang, 193-94.

**Response: DENIED as to the statement "and [MG] did not tell any other police officer that she had had consensual sex around the time of the rape" for the reasons set forth in the Motion to Strike, Doc. 366. The rest of the statement is admitted.**

16. Thomas-Boyd's tests showed that there were only H Blood Group Substance (BGS) antigens in the semen in both MG's vaginal swab and underpants, that there was a concentrated semen stain on the underpants, that Maria Gonzalez was a non-secretor, meaning she could not be the source of the H antigens on the swab and underpants, and that Starks was a B secretor, and therefore could not be the source of the semen. Exhibit 12, Thomas-Boyd Deposition, 161-66; Exhibit 13, Blake Deposition,170-76, 199-204, 230-33; Exhibit 14, Blake Affidavit June 1, 2004; Exhibit 15, Harmor Deposition,160, 193.

**Response**: **Admitted.**

17. Based on her findings, Thomas-Boyd should have reported and testified to her conclusion that because she found O secretor BGS on the vaginal swab and panties, which could not have originated from the victim who was a non-secretor, and had to be from the semen, Bennie Starks, an ABO Type B secretor, could not produce this result and thus was excluded as the source of the semen. Exhibit 15, Harmor 190, 193-94.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

18. Thomas Boyd testified at the Starks trial in a manner that led the Appellate Court to understand her testimony to be "that approximately 14% of the population of the United States has the same blood type as the defendant, and that any B-type secretor in that percentage group could have been the possible source of the semen examined by her." Exhibit 16, People v. Starks, 2-86-1021, Order Affirming Conviction, June 22, 1988, p. 9; Exhibit 14, Blake Affidavit, June 1, 2004 pp. 15-21.

**Response**: **Admitted.**

19. DNA testing proved definitively that the semen on the vaginal swab taken from Maria Gonzalez and from her underpants after the rape was from the same person and that person was not Bennie Starks. Exhibit 15, Harmor 119-21; Exhibit 14, Blake Affidavit June 1, 2004.

**Response: DENIED as to the statement "after the rape" for the reasons set forth in the Motion to Strike, Doc. 366. The rest of the response is admitted.**

20. Defendant Biang contacted Defendant Schneider, who was his personal dentist at some point, to be a forensic dental consultants to evaluate a bite mark on the victim, Maria Gonzalez. Exhibit 8, 30(b)(6), 228-29; Exhibit 5, Biang 83-84.

**Response: The statement that Defendant Schneider was Defendant Biang's personal dentist is DENIED for the reasons set forth in the Motion to Strike, Doc. 366. The rest of the statement is admitted.**

21. Biang contacted Dr. Schneider and "I just explained that we had a victim who had been beaten and bitten by the apparent offender, and we asked him if he could come out and look at the -- you know, identify the bite marks and match them with the person that we had in custody." Exhibit 5, Biang 90. After a pause, interrupting the next question, Biang added, at his deposition, "Or tell us it wasn't his bite mark, for that matter." Exhibit 5, Biang 91.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

22. Photographs of the bite mark on Maria Gonzalez's left shoulder were taken by Officer Tench on January 19, 1986 at around 1:30 a.m., by Officer Anderson at

Victory Hospital on January 22 at 11 a.m., and again on January 29 when he took 12 exposures, and he turned these photographs in to the evidence lab at the Waukegan Police Department, but these photographs were never produced in discovery in the criminal case. Exhibit 18, Anderson Deposition, 23-24, 49-50, 87-88; Exhibit 19, Anderson Report 1/29/86; Exhibit 20, Stainthorp affidavit.

**Response: Admitted, with the caveat that the cited testimony of Officer Anderson establishes that the photographs taken by Tench on January 19, 1986 were taken prior to 3:30 a.m., not necessarily at 1:30 a.m.**

23. Officer Anderson went to Victory Hospital with Drs. Schneider and Hagstrom, who at some point were long time business partners in Northern Illinois Forensics, and took photographs of the bite mark on Gonzalez, and determined himself how to take the photographs, with no instructions from Drs. Schneider and Hagstrom. Exhibit 18, Anderson, 37, 40. Although Drs. Schneider and Hagstrom subsequently claimed that these photographs were the ones they used to compare the bite mark to Bennie Starks dentition, this is not correct. Exhibit 18, Anderson, 56, 94-95, 107. The date on the police report documenting this photography session has been altered, with a prior date on the report, that looks like 1/28/86, being changed to now appear to date the session as January 22. Exhibit 18, Anderson, 34-35; Exhibit 17, Schneider, 99- 100, 135-37.

**Response: Admit that "Officer Anderson went to Victory Hospital with Drs. Schneider and Hagstrom" and that Anderson "photographs of the bite mark on Gonzalez." The rest of the statement is DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

24. Biang had "lots of conversations" with Drs. Schneider and Hagstrom during the criminal prosecution of Starks but he did not prepare any reports about those conversations. Exhibit 5, Biang, 156-57. Biang talked to Dr. Schneider and Dr. Hagstrom concerning their opinions with respect to who made the bite marks, with the dentists telling Biang that Starks, beyond any question, made those bite marks. Exhibit 5, Biang, 101, 121-22. In the course of his work on the case, Dr. Hagstrom became aware of evidence tending to inculpate Starks, including that he lived across the street from the location of the attack, that police found scratches on Starks' back when he was examined by the police after the attack, and he was provided with and viewed a picture of scratches on Starks' back that had been taken by the police. Exhibit 21, Dr. Hagstrom Deposition,158, 161, 176.

**Response: Admit that "Biang had 'lots of conversations' with Drs. Schneider and Hagstrom during the criminal prosecution of Starks but he did not prepare any reports about those conversations." The rest of the statement is DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

25. Defendants Drs. Schneider and Hagstrom reported to the prosecutor that their examination of the dental evidence established beyond any doubt that Starks was the person who bit Gonzalez, and this level of certainty was very important to the prosecutor and was extremely compelling evidence of Starks' guilt of all the

7

crimes he was accused of, and never advised the prosecutor that expressing this level of certainty was inconsistent with national odontological standards. Exhibit 9, Berrones 206-08; Exhibit 22, Hagstrom and Schneider Report, May 13, 1986; Exhibit 23, Hagstrom and Schneider Report, July 1, 1986; Exhibit 24, Senn and Pretty Report, May 10, 2010.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

26. Neither Dr. Hagstrom nor Dr. Schneider kept any records of when they did the work that they did on the Bennie Starks case even though this was a necessary part of the process, did not write down any description of the wound when they saw it, did not measure the wound, and did not measure the dimensions of the bite mark as shown in the photographs they used in stating that Starks made the bite mark. Exhibit 21, Hagstrom, 25-26, 73; Exhibit 17, Schneider, 37, 142- 43, 178-82.

**Response: DENIED with respect to the statement, "even though this was a necessary part of the process" for the reasons set forth in the Motion to Strike, Doc. 366. The rest of this statement is admitted.**

27. Drs. Hagstrom and Schneider, working together, oriented the bite mark on Maria Gonzalez in accordance with her description of how she was bitten and because that was the way it fit, and not in accordance with the appearance of the bite mark. Exhibit 21, Hagstrom 37-38, 95; Exhibit 17, Schneider 152-54, 174-75. This orientation was 180 degrees wrong, and actually compared the mandibular portion of the bite mark with the models of Starks' maxillary dentition. In all persons, the maxillary (upper) jaw is wider than the mandibular (lower) jaw. In addition, the photograph of the bite mark has the ruler used to establish scale out of focus, so the actual size of the bite mark cannot be established. Exhibit 4, Tr. T/S 630-33; Exhibit 24, Senn and Pretty Report, May 10, 2010; Exhibit 25, Hagstrom and Schneider Faulty Orientation of Bite Mark; Exhibit 26, Dr. Senn Deposition, 39-40, 99-100; Exhibit 27, Dr. Senn Report 11/25/14.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

28. Drs. Hagstrom and Schneider determined that Starks' mandibular dentition did not make the mandibular portion of the bite mark on MG, but they did not report this to the prosecutor. Exhibit 21, Hagstrom 97; Exhibit 17, Schneider 173.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

29. Dr. Hagstrom does not know whether the dimensions of a bite mark change over time but does know that the bite appearance changes over time, so that one day it may appear there was a void in the mark, and on subsequent days a bruise appears, showing a tooth was there. Exhibit 21, Hagstrom 43, 50.

**Response**: **Admitted, with the caveat that Dr. Hagstrom actually provided the testimony regarding "one day it may appear there was a void in the mark, and on subsequent days a bruise appears, showing a tooth was there" on page 51 of his deposition, which is not included in the Plaintiff's exhibits.**

30. When shown photographs of the bite mark at their depositions, neither Dr. Hagstrom not Dr. Schneider were able to identify drag marks made by teeth. Exhibit 21, Hagstrom, 61, 65; Exhibit 17, Schneider, 144-49.

**Response**: **Admitted, with the caveat that both Drs. Schneider and Hagstrom repeatedly testified that said photographs *used in their deposition* were of poor quality, that they had not reviewed said photographs since 1986, and were not prepared to render any forensic opinions regarding the photographs at their depositions.**

31. Neither Dr. Hagstrom nor Dr. Schneider had any concerns that portions of the photographs of the bite mark that they used in their examination were out of focus. Exhibit 21, Hagstrom, 71; Exhibit 17, Schneider, 130-31.

**Response**: **Admitted.**

32. Drs. Schneider and Hagstrom obtained a photograph from a photo lab which they claim was the exact same dimensions as the bite mark, so as to compare this photograph to the models they had made of Starksø dentition. Exhibit 17, Schneider, 119. This photograph, in which the ruler used to show scale was out of focus, was not identical to any photograph introduced into evidence at the criminal trial of Starks, was never produced to the prosecutor and has never been produced in this litigation. Exhibit 17, Schneider, 127-30; Exhibit 20, Stainthorp affidavit.

**Response**: **Admitted, with the caveat that Dr. Schneider's deposition testimony establishes that the photograph he and Dr. Hagstrom used to make the comparison was a copy, scaled to be life-sized, of the same photograph produced at trial as Exhibit 40. Insofar as this statement implies Drs. Schneider and Hagstrom used a *different* photograph, other than a scaled copy of Exhibit 40, to conduct their comparison, this statement is DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

33. Drs. Hagstrom and Schneider produced to the prosecutor, and used at trial a chart assigning points to the number of similarities between the bite mark and Starks dentition, and claimed that the chart showed 62 points of similarity, but did not disclose to the prosecutor, defense counsel or the jury that this chart was experimental, and at their depositions were unable to explain how they arrived at the results noted on the chart. Exhibit 21, Hagstrom 106; Exhibit 17, Schneider 170, 184-85, 268, 279.

**Response: DENIED as to the statement "used at trial" for the reasons set forth in the Motion to Strike. Further DENIED insofar as this statement implies the chart was actually "experimental" at the time it was used by Drs. Schneider and Hagstrom, for the reasons set forth in the Motion to Strike, Doc. 366. The rest of the statement is admitted, with the caveat that Drs. Schneider and Hagstrom testified that they had not**

reviewed the chart since 1986, and did remember their thought process in using the chart in 1986 at the time of their depositions.

34. On May 13 1986 Hagstrom and Schneider sent to the prosecutor a report in which they stated that: We have completed examination of photos taken of the bites inflicted on Maria Gonzalez. We have examined and compiled analytical work ups from the models of Benny Starks Jr.'s teeth. We have done a detailed comparison of the bite marks with the models and have found a definite match. It is our conclusion that the bites on Maria Gonzalez were made by Benny Starks Jr. Exhibit 22, Hagstrom and Schneider Report, May 13, 1986; Exhibit 17, Schneider, 197-98; Exhibit 21, Hagstrom, 107. In fact, both Hagstrom and Schneider had not concluded that Starks definitely made the marks, and held the opinion that another person could have left those marks, and had concluded only that Starks could have made the bite, but they did not tell the prosecutor or testify at trial to this, because the prosecutor and defense counsel did not ask. Exhibit 21, Hagstrom 107-12; Exhibit 17, Schneider, 316-17. Expressing this level of certainty was inconsistent with accepted odontological standards in 1986, but neither of the Defendant dentists told the prosecutor this. Exhibit 24, Senn and Pretty Report, May 10, 2010; Exhibit 9, Berrones, 209.

**Response: Admitted as to statement "On May 13 1986 Hagstrom and Schneider sent to the prosecutor a report in which they stated that: We have completed examination of photos taken of the bites inflicted on Maria Gonzalez. We have examined and compiled analytical work ups from the models of Benny Starks Jr.'s teeth. We have done a detailed comparison of the bite marks with the models and have found a definite match. It is our conclusion that the bites on Maria Gonzalez were made by Benny Starks Jr." The rest of this statement is DENIED as set forth in the Motion to Strike, Doc. 366.**

35. On July 1, 1986, Defendants Schneider and Hagstrom submitted a report to the prosecutor in the Starks case in which they described the work they had done on the case involving "the bite mark inflicted on Maria Gonzalez September 22, 1985 [sic] and the dentition of Bennie Starks Jr.," and stated that: The comparison of the models to the bite photo and the overlays to the bite photo indicated a very specific and unusual pattern leading us to the conclusion that the bite on Maria Gonzalez was inflicted by Bennie Starks Jr. Exhibit 23, Hagstrom and Schneider Report, July 1, 1986.

**Response: Admitted.**

36. Although this was the first time, other than classes, that either Dr. Schneider or Hagstrom had worked on a case where they were comparing a bite mark to a model of someone's teeth, they did not seek to have their conclusions reviewed by anyone else, even though there was an experienced forensic odontologist at Northwestern University with whom Dr. Schneider had a close relationship. Exhibit 17, Schneider 206; Exhibit 21, Hagstrom, 105.

**Response: Admitted.**

37. Drs. Schneider and Hagstrom failed to advise the prosecutor that they had misrepresented the facts and evidence in the Bennie Starks case. Exhibit 9, Berrones, 48.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

38. DNA testing proved definitively that the semen on the vaginal swab taken from Maria Gonzalez and from her underpants after the rape was from the same person and that person was not Bennie Starks. Exhibit 15, Harmor Deposition, 120-21; Exhibit 28, FSA Report 4/3/2000; Exhibit 14, Blake Affidavit June 1, 2004; Exhibit 29, Cellmark report 12/5/2005; Exhibit 30, FSA Report 12/20/2005; Exhibit 13, Blake 35-36.

**Response: Admitted.**

39. Based on the DNA exclusion of Starks as the source of the semen which established that the result on retrial would probably be different, the Appellate Court reversed the denial of Plaintiff's post conviction motion and petition and vacated his convictions for aggravated criminal sexual assault and attempted aggravated criminal sexual assault and remanded those cases for a new trial. Exhibit 31, People v. Starks, 365 Ill. App. 3d 592 (2006). Subsequently, the Appellate Court reversed the dismissal of Starks' Petition for Post Conviction Relief challenging his aggravated battery conviction, relying in large part on the fact that DNA excluded him as the source of the semen. Exhibit 32, People v. Starks, 2012 IL App (2d) 110324 (2012).

**Response: Admitted.**

40. The sexual assault charges against Starks were nolle prossed on May 15, 2012, and the aggravated battery charges was nolle prossed on January 7, 2013. Exhibits 33 and 34. On September 25, 2013, Plaintiff was granted a Certificate of Innocence, establishing that he was factually innocent of all charges brought against him. Exhibit 35.

**Response: DENIED for the reasons set forth in the Motion to Strike, Doc. 366.**

                                                Respectfully Submitted,
                                                BOLLINGER CONNOLLY KRAUSE LLC

                                                **/s/ Michael D. Krause**
                                                One of the Attorneys for the Defendants, Dr. Carl Hagstrom and Dr. Russell Schneider

Michael D. Krause, ARDC #6207328
Robert Tengesdal, ARDC # 6288650
Andrew S. Chestnut, ARDC # 6312527
BOLLINGER CONNOLLY KRAUSE, LLC
500 West Madison, Suite 2430
Chicago, Illinois 60661
Tel:    (312) 253-6200
Fax:   (312) 253-6201

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of April, 2015, I electronically filed this Motion with the Clerk of the Court using the CM/ECF electronic system, and all counsel of record were served by CM/ECF ó USDC.

/s/     Andrew S. Chestnut